Michael R. BURCH et ux., Appellants,

v.

CITY OF SAN ANTONIO et al.,
Appellees.

No. 15164.

Court of Civil Appeals of Texas,
San Antonio.

March 20, 1974.

Rehearing Denied May 1, 1974.

William H. Robison, Gray, Gardner & Robison, San Antonio, for appellants.

Sawtelle, Goode, Davidson & Troilo, San Antonio, for appellees.

## ON MOTION FOR REHEARING

CADENA, Justice.

Appellees' motion for rehearing is granted. The opinion previously filed herein is withdrawn and the following is substituted therefor:

Plaintiffs, Michael R. Burch and wife, Vernell L. Burch, appeal from an order of a district court of Bexar County denying their application for a temporary injunction restraining further proceedings in connection with a condemnation case, pending in the County Civil Court at Law of Bexar County, in which defendant, City of San Antonio, acting through its Water Works Board of Trustees, seeks to obtain the fee simple title to land owned by plaintiffs.

The special commissioners appointed after the statement in condemnation was filed held a hearing and made an award of $290,000.00. Plaintiffs filed their objections to the award and, after this award had been deposited in court, the Hon. T. Armour Ball, Judge of the County Civil Court at Law, ordered the issuance of a writ of possession. Plaintiffs then filed this suit in which they seek to enjoin the City of San Antonio and its agent, the Water Works Board of Trustees, from taking possession of the land and from proceeding further in the condemnation case. Plaintiffs also pray for an injunction restraining the Hon. T. Armour Ball from issuing any order or considering, hearing or determining any issue in connection with the eminent domain proceedings; and further seek to enjoin James W. Knight, County Clerk, from issuing, and Bill Hauck, Sheriff, from executing, any writ of possession or other process designed to deprive plaintiffs of their land.

Plaintiffs assert that the condemnation proceedings are void because the City Council of the City of San Antonio has taken no official action determining the

necessity for taking plaintiff's land for water system purposes or the necessity that the fee simple title to such land, as distinguished from a mere easement, be taken.

In this opinion the City of San Antonio will sometimes be identified as "City," while the Water Works Board of Trustees of the City of San Antonio will sometimes be identified as "Board." All statutory references are to Vernon's Tex.Rev.Civ. Stat.Ann.

Article 1109 authorizes cities to own and operate water systems, and Section 3 of *that statute empowers municipalities to acquire land for the extension, improvement or enlargement of such systems by condemnation.* The statute further provides, in Section 5, that cities ". . . may acquire the fee simple title to any land or property when same is expressed in the resolution ordering said condemnation proceedings by the governing body."

Article 1109b empowers cities to "appropriate private property for public purposes," including the operation of a water system, ". . . whenever the governing authorities shall deem it necessary. . . ." The power includes the "right of the governing authority, when so expressed, to take the fee in the lands so condemned."

■ It is clear that these statutes grant the power of eminent domain to cities, and not to subordinate municipal boards or officials. Further, the two statutes contemplate (1) a finding by the "governing authorities" that the taking of private property is necessary; (2) authorization of the institution of condemnation proceedings by "resolution" adopted by the "governing body"; and (3) where it is deemed necessary to acquire the fee, the expression of such necessity by the "governing body."

■ It is apparent that the terms "governing body" and "governing authorities," as used in these statutes, are synonymous and refer to the body, commonly called the "city council," in which rests the legislative powers which have been delegated to cities, and, since it is undisputed that the city council of the City of San Antonio has taken no formal action declaring the necessity for the taking of plaintiffs' land, or authorizing the institution of condemnation proceedings in this case, or declaring the necessity for taking the fee simple title to plaintiffs' land, as distinguished from an easement, it must be concluded that, looking only to the statutes, the condemnation proceedings in question were unauthorized. Stirman v. City of Tyler, 443 S.W.2d 354 (Tex.Civ.App.—Tyler 1969, writ ref'd n. r. e).[1]

■ Article I, § 3, Par. 4, of the City's home rule charter contains a general grant of the power of eminent domain and declares that such power ". . . may be exercised in any manner authorized by the Constitution or laws of Texas, or *as may be prescribed by ordinance.*" (Emphasis added.) It cannot be persuasively argued that this charter provision has the effect of authorizing the institution of eminent domain proceedings by City without complying with the express restrictions on the exercise of such right found in Articles 1109 and 1109b. To construe the charter provision as vesting in the city council the power to nullify, by ordinance, the statutory requirements would be to bring the charter provision into patent conflict with statutory requirements, thus rendering the charter provision ineffective. Texas Const. Art. XI, § 5, Vernon's Ann.

While it is undisputed that City's legislative body has not made the determinations enumerated in Articles 1109 and 1109b, it is conclusively established the Board, by

---

1. Article 1109a, Section 1, authorizes cities to "purchase or otherwise acquire additions to, or extensions or enlargements of any such water systems. . . ." Here, again, the power is granted to cities. We see no justification for construing this provision as dispensing with compliance with the requirements embodied in Articles 1109 and 1109b.

adoption of a formal resolution, has determined the necessity for taking plaintiffs' land and the necessity for acquiring the fee to such land, and has authorized the institution of these proceedings. It is argued by City and Board that such action by Board satisfies the requirements of Articles 1109 and 1109b.

The water works system was purchased by City with proceeds derived from the sale of revenue bonds, and, at that time, the management and control of the system was placed in the hands of a board of trustees. This procedure was authorized by Article 1109a, which it is necessary to examine in order to evaluate the contentions raised by City and Board.

As enacted in 1925 (Acts 1925, 39th Leg., p. 154, ch. 33), it authorized certain cities, including the City of San Antonio, to issue revenue bonds for the purpose of acquiring, by purchase or otherwise, water works systems and additions to, or extensions and enlargements of, such systems and to mortgage and encumber such systems and the revenues thereof as security for payment of the bonds (Section 1). The governing body of the city was authorized, when issuing the bonds, to ". . . enter into such agreements and covenants with respect to the manner of payment of such bonds, . . . and the application of the revenues of the water system as it may deem fit, provided, however, that no such bond, . . . shall ever be a general obligation of such city, . . . ." (Section 2).

Under Section 4 of Article 1109a, "The management and control of any such system or systems during the time same are encumbered, may by the terms of such encumbrance be placed in the hands of the city council of such city; but if deemed advisable may be placed in the hands of a board of trustees to be named in such encumbrance, consisting of not more than five (5) members, one of whom shall always be the mayor of such city; . . . ." This section further provides:

"The terms of office of such board of trustees, *their powers and duties, the manner of exercising same,* the election of their successors, *and all matter pertaining to their* organization and *duties may be specified in such contract of encumbrance; but in all matters where such contract is silent, the laws and rules governing the council of such city shall govern said board of trustees so far as applicable.* Such city council or board of trustees having such management and control shall have power to make rules and regulations governing the furnishing of service to patrons and for the payment for same, and providing for discontinuance of such service to those failing to pay therefor when due until payment is made; and such city council shall have power to provide penalties for the violation of such rules and regulations and for the use of such service without the consent or knowledge of the authorities in charge thereof, and to provide penalties for all interference, trespassing or injury to any such systems, appliances or premises on which same may be located." (Emphasis added.)

On May 26, 1925, City purchased the water works system from its private owners through issuance of $7,000,000.00 of water revenue bonds, with the bonds being secured by a first mortgage deed of trust to St. Louis Union Trust Company. The deed of trust, among other things, vested possession, management and control of the water system in a board of trustees as long as the bonds remained outstanding and also created a first lien on the system's revenues which were pledged to the payment of the bonds. In 1957, City issued $2,178,000.-00 in water revenue refunding bonds, and these new bonds were secured by a pledge of the system's revenues. Ordinance No. 24819, which authorized the issuance of the refunding bonds, again placed management and control of the system in a board of trustees, the present Board, for so long as any bonds remained outstanding. Thereafter, from time to time, City has issued ad-

ditional revenue bonds, all of which are subject to the provisions of Ordinance No. 24819.

Paragraph 27 of such ordinance vested in Board ". . . absolute and complete authority and power with reference to the control, management and operation of the System and expenditure and application of the revenues of the system, . . ." and recited that ". . . in connection with the management and operation of the System and the expenditure and application of the revenues therefrom, the Board of Trustees shall be vested with all of the powers of the City with respect thereto, including all powers necessary or appropriate for the performance of all the covenants, undertakings and agreements of the City contained in this ordinance, . . . with the exception of fixing rates and charges for service rendered by the System, . . . and, to the extent authorized by law and by this Ordinance, shall have full authority with reference to making of extensions, improvements and additions to the System and the acquiring by purchase or condemnation of properties of every kind in connection therewith."

By adoption of Ordinance No. 24819, City clearly intended, "to the extent authorized by law," to vest in Board "full authority" to make extensions and improvements to the system and, "in connection therewith," to acquire by condemnation "properties of every kind."

Plaintiffs assert that the attempted delegation by the city council of the power of eminent domain was not "authorized by law," and that, therefore, the attempted delegation of such power cannot be given effect. City and Board urge that Article 1109a, which authorizes cities to place the management and control of encumbered water systems in a board of trustees, and authorizes the city council to specify the powers of the trustees, authorizes the delegation by the city council of the power of

eminent domain to Board, and that, therefore, the provisions of Ordinance No. 24819 investing the Board with such power are valid.

█ We accept plaintiffs' contention that a municipality to which the power of eminent domain has been delegated by the sovereign cannot, in the absence of statutory authorization, delegate such power to a subordinate municipal official, board or agency. 1 Nichols, Eminent Domain § 3.-211 (1973). Further, we assume, without deciding, that the provisions of Article 1109a, broad as they appear to be, do not authorize the city council to transfer legislative power, such as is the power of eminent domain.[2] This assumption would compel the conclusion that the city council's attempt, in 1957, to vest the power of eminent domain in Board was ineffective.

█ However, in 1965, the legislature enacted what is now Article 1174a–8, which is a statute of the type generally referred to as a "validating" or "curative" act. That statute, in Section 3, provides:

"All governmental proceedings of home rule cities, save and except those relating to annexation of territory, are hereby ratified and confirmed and *all actions of the governing bodies of home rule cities . . . in the authorization, issuance and delivery of bonds, . . . are hereby ratified and confirmed and said obligations shall have effect according to their purport and tenor.*" (Emphasis added.)

Ordinance No. 24819 constitutes the authority for the issuance of the revenue bonds. As authorized by Article 1109a, Section 2, the ordinance not only authorizes the issuance of the bonds but provides for the creation of the board of trustees and contains certain covenants by the city. The provisions of this ordinance constitute a contractual obligation of City. San An-

2.  Luby v. City of Dallas, 396 S.W.2d 192 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.).

**658**

tonio Independent School District v. Water Works Board of Trustees, 120 S.W.2d 861 (Tex.Civ.App.—Beaumont 1938, writ ref'd). The obligation incurred by City in issuing the bonds included the obligation to operate the water works system in the manner specified in the ordinance which, wisely or not, made Board an almost autonomous body and divested the city council of nearly all control over the operation of the system.

We conclude that Section 3 of Article 1174a–8 had the effect of validating the provisions of Ordinance 24819.

It is well settled that a legislature has the power to validate any past action which the legislature might have authorized beforehand. City of Mason v. West Texas Utilities Co., 150 Tex. 18, 237 S.W.2d 273 (1951). The right of the legislature to authorize a municipal legislative body to delegate a portion of its legislative power to a subordinate official or agency cannot be doubted. The recognition of the existence of such power in the state legislature is implicit in the very statement of the doctrine which prohibits a municipal governing body from delegating its legislative power in the absence of statutory authorization.

Because validating statutes serve the beneficient policy of sustaining the reliability of official actions and securing expectations formed in reliance thereon, they are in reason entitled to liberal construction in order to achieve full fruition of their remedial purposes. 2 Sutherland, Statutory Construction § 41.11, p. 290 (4th ed. 1973). This attitude toward such legislation received the blessing of our Supreme Court in *City of Mason,* where Justice Sharp said, "If a statute is curative or remedial in its nature, the rule is generally applied that it be given the most comprehensive and liberal construction possible." 237 S. W.2d at 280.

In view of this judicial attitude, it must be concluded that Section 3 of Article

1174a–8 had the effect of validating the provisions of Ordinance No. 24819.

The judgment of the trial court is affirmed.