# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

========================================

## ON MOTION FOR REHEARING

========================================

## NO. 03-03-00496-CV

**Harry M. Whittington; Mercedes B. Whittington; Mercedes Gregg f/k/a Mercedes
Whittington, individually and as trustee of the Margaret Lynn Puckett 1989 Trust,
the Sara Whittington May 1989 Trust, the Caroline Elizabeth Puckett 1989 Trust,
the Michael Erskine May 1989 Trust, the Camille Meriwether May 1989 Trust,
and the William Tyndale Puckett, Jr. 1989 Trust; Sally Whittington May, individually
and as trustee of the Margaret Lynn Puckett 1989 Trust, the Sara Whittington May
1989 Trust, the Caroline Elizabeth Puckett 1989 Trust, the Michael Erskine May 1989
Trust, the Camille Meriwether May 1989 Trust, and the William Tyndale Puckett, Jr.
1989 Trust; and Margaret Whittington Puckett, individually and as trustee of the
Margaret Lynn Puckett 1989 Trust, the Sara Whittington May 1989 Trust, the
Caroline Elizabeth Puckett 1989 Trust, the Michael Erskine May 1989 Trust,
the Camille Meriwether May 1989 Trust, and the William Tyndale
Puckett, Jr. 1989 Trust, Appellants**

**v.**

**City of Austin, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
NO. 2403, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING**

---

## O P I N I O N

Our opinion and judgment issued on June 8, 2005, are withdrawn, and the following
opinion is substituted.

This is an appeal in a condemnation case. The trial court[1] granted partial summary judgment that the City of Austin (the "City") had authority to condemn eight lots in downtown Austin owned by appellants, Harry M. Whittington and members of his family (the "Whittingtons"). The issue of compensation was then tried to a jury, which awarded the Whittingtons $7.75 million for their property. The Whittingtons appeal the trial court's partial summary judgment ruling, incorporated in the final judgment, and the trial court's determination of the prejudgment interest accrual date. Concluding that the City failed to meet its summary judgment burden regarding its authority to condemn the Whittingtons' property, we reverse and remand. However, we overrule the Whittingtons' prejudgment interest issue to provide guidance in the event it arises again on remand.

## BACKGROUND

The Whittingtons own a city block in downtown Austin near the Austin Convention Center and across Red River street from the new Hilton hotel. On August 9, 2001, the Austin City Council passed a resolution that the Whittingtons' property, "Lots 1-8, inclusive, Block 38 of the Original City of Austin, in the City of Austin, Travis County, Texas should be acquired for a public use" and authorizing the city attorney to file a condemnation suit "and take other appropriate action to acquire the property." While professing that the property should be acquired for *a* public use, the resolution was silent regarding *what* public use the city council intended to effectuate by condemning the Whittingtons' property.[2]

---

[1] The final order was signed by Judge Phillips, while a different judge granted the partial summary judgment in this case.

[2] The City admits that it had previously initiated what it terms "a flawed condemnation proceeding" aimed at the Whittingtons' property, which ultimately had been dismissed. Defects in

2

On October 29, 2001, the City filed an original petition against the Whittingtons to condemn the property identified in its resolution. *See* Tex. Prop. Code Ann. § 21.012(b) (West 2004). In the petition, the City's attorneys assert that the City's proposed "public use" for the property is a parking garage and an Austin Energy chilling plant. The trial court appointed special commissioners, who held a hearing and awarded the Whittingtons $7,650,000. The City deposited the amount of this award into the registry of the trial court, which entitled the City to take possession of the property pending the results of further litigation. *Id*. § 21.021. Both parties filed objections to the amount of the special commissioners' damages award. Additionally, the Whittingtons contended that the City's intended use of the property was not a permissible "public use."

The City filed a motion for partial summary judgment asserting that there was no genuine issue of material fact regarding its right to condemn the property. *See* Tex. R. Civ. P. 166(a). The trial court granted the motion. The case proceeded to trial on the issue of compensation and the jury awarded the Whittingtons $7.75 million. The trial court rendered a final judgment incorporating its partial summary judgment and the jury verdict on damages. The judgment further ascertained that the accrual date for prejudgment interest was January 24, 2002, the date the City had deposited the amount of the special commissioners' award. This appeal ensued.

---

the current proceeding have also been alleged. In addition to the arguments addressed in this appeal, there evidently has been litigation regarding the status of an alley on the Whittingtons' block running between lots 1-4 and lots 5-8. The present condemnation proceeding, as noted above, is addressed only to "Lots 1-8, inclusive," within the block.

3

**DISCUSSION**

The Whittingtons present two issues on appeal. First, they contend that the trial court erred in granting partial summary judgment that the City had authority to condemn their property. Specifically, the Whittingtons argue that the City did not meet its summary judgment burden to establish either the necessity for the condemnation or that the condemnation was for a valid public purpose. In the alternative, the Whittingtons assert that their summary judgment evidence raised genuine issues of material fact regarding whether the condemnation was necessary, whether it furthered private rather than public purposes, and whether the City's decision to condemn the property was fraudulent, arbitrary and capricious, and in bad faith. To raise a fact issue, the Whittingtons rely on the corporate representative deposition testimony of Robert Hodge, who admitted that: (1) the City could have met all of its projected convention center parking needs for a fraction of the cost merely by non-renewing contract parking leases in the City's existing parking garage at Second and Brazos; (2) at the time the Austin City Council approved exclusive negotiations with Hilton to develop the convention center hotel project, the City had been assured that the project would include dedicated convention center parking sufficient to meet the projected needs; and (3) the City began to target the Whittingtons' property only after convention center parking in the hotel project fell through, and did not conceive the idea to place a chilling plant on the property until still later.

In their second issue, the Whittingtons contend that if we uphold the summary judgment, we should modify the final judgment to award prejudgment interest accruing from July

4

22, 2000, 180 days after the Whittingtons represent that the City first gave them notice of intent to condemn their property.

**Summary judgment**

*Standard of review*

A party moving for traditional summary judgment carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166 a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex. 1999); *see also Voice of the Cornerstone Church Corp. v. Pizza Prop. Ptnrs*, 2005 Tex. App. LEXIS 1804, at *22-23 (Tex. App.—Austin 2005, no pet.). The nonmovant has no burden to respond to a traditional summary judgment motion unless the movant conclusively establishes its cause of action or defense. *See Willrich*, 28 S.W.3d at 23; *Rhone-Poulenc, Inc.*, 997 S.W.2d at 222-23. Summary judgments must stand on their own merits. *Willrich*, 28 S.W.3d at 23. Accordingly, the nonmovant need not respond to a traditional summary judgment motion to contend on appeal that the movant's summary judgment proof is insufficient as a matter of law to support summary judgment. *Id.*; *see Rhone-Poulenc, Inc.*, 997 S.W.2d at 223. For the same reasons, we do not consider evidence tendered by the non-movant in response to a traditional summary judgment motion when evaluating whether the movant met his or her initial burden. *Willrich*, 28 S.W.3d at 23.

The standard for reviewing a summary judgment is well established: (I) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law; (ii) in deciding whether there is a disputed

material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and (iii) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 645-46 (Tex. 2000); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985); *Henry v. Kaufman County Dev. Dist. No. 1*, 150 S.W.3d 498, 502 (Tex. App.—Austin 2004, pet. dism'd by agr.). The propriety of summary judgment is a question of law; therefore, we review the trial court's decision de novo. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994).

### Texas condemnation law

While the procedural framework of condemnation actions differs from other civil actions, the filing of the condemnation petition and special commissioners' hearing has been described by the supreme court as an "administrative proceeding" which "converts into a normal pending cause when objections to the commissioners' award are filed." *Hubenak v. San Jacinto Gas Transmission Co.*, 141 S.W.3d 172, 179 (Tex. 2004) (internal citations and quotations omitted); *see generally* Tex. Prop. Code Ann. §§ 21.011-.016. Thus, upon the filing of objections to the special commissioners' award, the City had the burden of proving, in the normal manner of a judicial proceeding, the essential elements of its condemnation claim. Accordingly, on summary judgment, the City had the burden of conclusively negating the existence of a genuine issue of material fact with regard to each element. *Willrich*, 28 S.W.3d at 23.

Broadly speaking, the City had to prove three essential elements to prevail on its condemnation claim. First, the City had to establish that it satisfied various formal prerequisites necessary to proceed in the trial court. The prerequisites include proof that a petition was filed that

6

complies with section 21.012(b) of the property code; an offer to purchase was made; special commissioners were duly appointed, sworn and made an award; and objections were filed. *See Hubenak*, 44 S.W.3d at 183-84. Although these requirements have sometimes been characterized as jurisdictional, the supreme court recently held that at least some of them are not. *Hubenak*, 44 S.W.3d at 180-84.

Next, the City had to prove that the condemnation was for a "public use." This requirement derives from Article I, section 17 of the Texas Constitution:

> No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money . . . .

Tex. Const. art. I, § 17. This provision is not a grant of powers to the State, but a limitation on the inherent sovereign power of eminent domain by imposing the requirements that the State take property only for "public use" and pay "adequate compensation" whenever doing so. *McInnis v. Brown Co. Water Improvement Dist. No. 1*, 41 S.W.2d 741, 744 (Tex. App.—Austin 1931, writ ref'd). Consistent with these limitations, the State, when delegating general eminent domain power to home-rule municipalities like the City of Austin, qualified the grant of power to the "exercise [of] the right of eminent domain *for a public purpose* to acquire public or private property" for various listed purposes or "any other *municipal purpose* the governing body considers advisable." Tex. Loc. Gov't Code Ann. § 251.001(a) (West 1999) (emphasis added). By requiring takings to be solely for public purposes, these limitations impliedly prohibit takings for private purposes or benefit. *Maher v. Lasater*, 354 S.W.2d 923, 924 (Tex. 1962).

7

There are two aspects to the "public use" requirement. First, the condemnor must intend a use for the property that constitutes a "public use" under Texas law. Second, the condemnation must actually be necessary to advance or achieve the ostensible public use. A related concept is that a mere legislative declaration that a given use is a public use or is necessary does not control if the true intended use is a private use. This second aspect of public use is commonly termed the "necessity" or "public necessity" requirement. *See*, *e.g.*, *Bevley v. Tenngasco Gas Gathering Co.*, 638 S.W.2d 118, 120 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e.); *see also City of Dallas v. Higginbotham*, 143 S.W.2d 79, 88 (Tex. 1940); *City of Arlington, Tex. v. Golddust Twins Realty Corp.*, 41 F.3d 960, 964-65 (5th Cir. 1994); 1 Judge Madison Rayburn, Rayburn on Condemnation §§ 8.03 (21st ed. 1998) (distinguishing from the public use issue the issue "where there is no doubt or uncertainty as to the public character of the use to which the Legislature has designated a specific project, and where the only question involved is the purpose, or necessity, of the extent of the use."); 8.05 ("The true nature of the use . . . whether or not it is in fact one of public or private character, is one of law ultimately, and sometimes is so mixed with questions of law and fact as to have to be determined by the courts or juries on contested fact issues."). How each aspect is proven differs.

Assuming there is proof of the condemnor's professed intended use of property, the question of whether that use constitutes a public use is one of law. *Maher*, 354 S.W.2d at 925 ("the ultimate question of whether a particular use is a public use is a judicial question to be decided by the courts.") Texas courts traditionally afford great weight to legislative declarations that a given use of property is a public use, whether in the form of statutes generally authorizing condemnation

8

for that purpose, *see*, *e.g.*, *Higginbotham*, 143 S.W.2d at 83-85, or in a governmental body's condemnation resolution regarding the particular property. *See Golddust*, 41 F.3d at 964 ("A municipality's exercise of eminent domain power is a legislative act."); *see also* Daniel B. Benbow, *Public Use as a Limitation on the Power of Eminent Domain in Texas*, 44 Tex. L. Rev. 1499, 1502 (1966) ("The issue is not . . . whether the use is public, but rather whether the legislature could have reasonably considered it to be public."). Nonetheless, despite such deference, the Texas Supreme Court has been resolute that public use ultimately remains a judicial question. *Maher*, 354 S.W.2d at 925; *Davis v. City of Lubbock*, 326 S.W.2d 699, 704 (Tex. 1959); *Higginbotham*, 143 S.W.2d at 83; *see Golddust*, 41 F.3d at 963. As the supreme court put it, "a mere declaration by the Legislature cannot change a private use or private purpose into a public use or public purpose." *Maher*, 354 S.W.2d at 925.[3]

---

[3] There is no concrete rule for determining whether a use is a public use; each case is usually decided upon the basis of its own facts and the surrounding circumstances. *Coastal States Gas Prod. Co. v. Pate*, 309 S.W.2d 828, 833 (Tex. 1958); *see Maher v. Lasater*, 354 S.W.2d 923, 925 (Tex. 1962); *Davis v. City of Lubbock*, 326 S.W.2d 699, 704 (Tex. 1959). At times, the supreme court has stated that "this court has adopted a liberal view concerning what is or is not a public use." *City of Dallas v. Higginbotham*, 143 S.W.2d 79, 84 (Tex. 1940). On the other hand, throughout the twentieth century, the court has also steadfastly rejected "that liberal definition of the phrase 'public use' . . . which makes it mean no more than the public welfare or good, and under which almost any kind of extensive business or undertaking to which the property is devoted." *Borden v. Trespalacios Rice & Irrigation Co.*, 86 S.W. 11, 14 (Tex. 1905); *see Davis*, 126 S.W.2d at 706; *Pate*, 309 S.W.2d at 833; *see also* Benbow, 44 Tex. L. Rev. at 1500 n.8 (describing broad "public benefit" or "public advantage" approach, under which "any use which serves to enlarge resources, encourage industry, or promote the general public welfare is a valid public use."). Instead, Texas courts have espoused a narrower "use by the public" concept: property can only be taken when "the public be entitled to share indiscriminately in the proposed use as a matter of right." *Id*. at 1500; *see Borden*, 86 S.W. at 14. Under these principles, the supreme court has invalidated takings for private benefit even in the face of legislative declarations of public use, and despite claims that the use would confer indirect public benefits. *Maher*, 354 S.W.2d at 925-26.

As for necessity, unless a statute requires affirmative pleading and proof of that element, necessity is presumed from "a determination by the condemnor of the necessity for acquiring certain property." *Higginbotham*, 143 S.W.2d at 88. "[W]here the use for which property is sought to be taken . . . is public, the necessity and expediency of exercising the power, and the extent to which the property thereunder is to be taken, are political or legislative, and not judicial, questions." *West v. Whitehead*, 238 S.W. 976, 978 (Tex. Civ. App.—San Antonio 1922, writ ref'd); *see also Higginbotham*, 143 S.W.2d at 88 (explaining that the question of necessity is "essentially political in its nature and not judicial") (internal citation omitted); *Bevley*, 638 S.W.2d at 121. Once the presumption of necessity arises, the defendant can contest the fact of necessity only by establishing affirmative defenses such as fraud (that, contrary to the ostensible public use, the taking would actually confer only a private benefit), bad faith, or arbitrariness.[4]

---

[4] *See*, *e.g.*, *Coastal Indus. Water Auth. v. Celanese Corp. of America*, 592 S.W.2d 597, 600 (Tex. 1979) ("In the absence of allegations that the condemnor acted arbitrarily or unjustly, the legislature's declaration that a specific exercise of eminent domain is for public use is conclusive"); *Higginbotham*, 143 S.W.2d at 88 ("a determination by the condemner of the necessity for acquiring certain property is conclusive in the absence of fraud."); *Anderson v. Teco Pipeline Co.*, 985 S.W.2d 559, 565-66 (Tex. App.—San Antonio 1998, pet. denied) ("once a company establishes . . . that its board of directors determined that the taking was necessary, a court should approve the taking unless the landowner demonstrates fraud, bad faith, abuse of discretion, or arbitrary and capricious action."); *Bevley v. Tenngasco Gas Gathering Co.*, 638 S.W.2d 118, 121 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e.) ("The legislative determination that a given exercise of eminent domain is for the public use creates a presumption in favor of the decision of the condemnor that the taking is necessary to accomplish the authorized purpose. In other words . . . a determination by the condemnor of the necessity for acquiring certain property is conclusive in the absence of fraud, bad faith or abuse."); James Noble Johnson, *Condemnation Legal Concepts and Strategy Options for Transaction Attorneys*, State Bar of Texas 26th Annual Advanced Real Estate Law Course (July 8-10, 2004) (recognizing that one can "contest the necessity of the particular taking in order to meet the public purpose. Such an attack is only permitted upon pleading and proof that the condemnor acted fraudulently or with a clear abuse of discretion.").

10

However, to gain this presumption of necessity, the condemnor must first establish that its governing board actually made a determination that the particular taking was necessary to advance the ostensible public use.[5]  Exactly what is required to make this showing is at the center of this appeal, and we address that issue below.

Finally, we again emphasize that the legal requirements governing condemnation proceedings "must be strictly followed."  *Horton v. Mills County*, 468 S.W.2d 876, 878 (Tex. App.—Austin 1971, no writ).  These requirements ultimately ensure that "the landowner is to be afforded adequate judicial review of his rights."  *Id*.

### *Whether the City met its summary judgment burden*

The Whittingtons' first two issues challenge whether the City met its summary judgment burden regarding the requirements of necessity and that its intended use of the property be a public use.  To meet its summary judgment burden regarding its right to condemn the property, the City proffered the following summary judgment evidence:

(1)  the Austin city charter, establishing that the City is a municipality that had eminent domain power under section 251.001 of the local government code.

---

[5]  *Mercier v. MidTexas Pipeline Co.*, 28 S.W.3d 712, 719-20 (Tex. App.—Corpus Christi 2000), *overruled on other grounds by Hubenak v. San Jacinto Gas Transmission Co.*, 141 S.W.3d 172 (Tex. 2004); *Teco Pipeline*, 985 S.W.2d at 565; *Saunders v. Titus County Fresh Water Supply Dist. No. 1*, 847 S.W.2d 424, 425-27 (Tex. App.—Texarkana 1993, no writ); *Burch v. City of San Antonio*, 508 S.W.2d 653, 655 (Tex. Civ. App.—San Antonio 1974), *rev'd on other grounds*, 518 S.W.2d 540, 545 (Tex. 1975); *see Higginbotham*, 143 S.W.2d at 88 (contemplating "a determination by the condemnor of the necessity of acquiring certain property")*; see also Valero Eastex Pipeline Co. v. Jarvis*, 990 S.W.2d 852, 856 (Tex. App.—Tyler 1999, pet. denied).

(2) the City's condemnation petition, which states that the City "has determined to acquire by condemnation fee simple title to Condemnees' real property for the purpose of building a parking garage for the Austin Convention Center, operated by the Austin Convention Center Department of Condemnor . . . as well as a district cooling plant to be operated by the Austin Energy Department of Condemnor."

(3) proof, including charter provisions, that the Convention Center Department and Austin Energy are City departments.

(4) documentation that in May 1998, the City's voters approved Proposition 1, which authorized a bond issue to finance "a venue project . . . described generally to consist of expansions to the City's Convention Center, including construction of tunnel improvements along Waller Creek in the vicinity of, and functionally related to the Convention Center, and related infrastructure."

(5) the August 9, 2001 Austin City Council Resolution 010809-11, previously discussed.

(6) papers from the condemnation proceedings, including the City's petition, the special commissioners' award, the parties' objections, and a receipt indicating that the City deposited the amount of the special commissioners' award into the registry of the court.

(7) the Whittingtons' responses to requests for admissions admitting ownership of the subject property and that "all conditions precedent to the invocation or acquisition of jurisdiction by the Court in which this eminent domain proceeding is now pending have been complied with and performed by the City."

*Public use*

The City urges that this evidence establishes, as a matter of law, that it condemned the Whittingtons' property for a public use. It attempts to invoke the principle that legislative declarations of public use are entitled to deference, *see, e.g.*, *Maher*, 354 S.W.2d at 925; *Higginbotham*, 143 S.W.2d at 85, pointing to three sets of legislative enactments. First, the City relies on Resolution 010809-11, observing that a municipality's exercise of eminent domain power

12

is in itself a legislative act. *See Golddust*, 41 F.3d at 963-64. Second, it relies on the voters' approval of Proposition 1, which it asserts incorporates statutory authorizations for "venue projects" and their "related infrastructure" so as to include parking facilities. *See* Tex. Local Gov't Code Ann. § 334.001 (West Supp. 2004-05). Finally, the City points to various other statutes that either appear to view parking facilities and chilling plants as public uses or at least leave room for that interpretation. *See id.*; *see also id.* §§ 251.001(a)(5), 281.044 (West 1999), 402.002 (West 2004-05), 431.021(8) (West 1999).[6]

At most, the City's summary judgment proof might establish that, as an abstract proposition, parking garages and chilling plants can be public uses under Texas law. But nowhere in the City's summary judgment evidence is there proof of any legislative determination to condemn the Whittingtons' property for one of these uses. The Resolution 010809-11 approved by the Austin City Council[7] stated only that the City was taking the Whittingtons' property for *a* "public use," but did not specify what its intended public use was. Nor does the City offer any other evidence, such as minutes of council meetings, to establish this critical fact. *See Horton*, 468 S.W.2d at 477-78 (in absence of resolution, "[p]roof of . . . necessity and the public purpose of the project may be made by introducing additional proceedings such as orders, resolutions, and minutes . . . .").

---

[6] The City also points out that the parties in *Golddust* did not dispute that stadium parking was a public use. *City of Arlington, Tex. v. Golddust Twins Realty Corp.*, 41 F.3d 960, 966 (5th Cir. 1994).

[7] We acknowledge that the council members likely did not draft the resolution themselves.

13

The City's evidence relating to voter approval of Proposition 1 does not meet its summary judgment burden to demonstrate a legislative determination to condemn the Whittingtons' property for use as a parking garage or chilling plant. The City's summary judgment evidence is, at best, unclear with regard to whether Proposition 1, as submitted to the voters, asked them to approve additional parking or a chilling plant for the convention center. In any event, it is undisputed that, at the time Proposition 1 was approved in May 1998, City staff had not yet formulated the intent to construct either additional convention center parking or a chilling plant, and that it did not target the Whittingtons' property until years later.

The City emphasizes that its condemnation petition and other pleadings contain various statements regarding uses it intends for the Whittingtons' property. But mere statements in pleadings, even if sworn, are not competent summary judgment evidence. *See Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995). Moreover, none of these statements are conclusive proof that the City's governing body, as distinguished from its attorneys and other agents, determined to condemn the Whittingtons' property for use as a parking garage or chilling plant. As the Whittingtons observe, a municipality's governing body cannot delegate its eminent domain power but "is the authority to exercise the power of eminent domain and must itself officially express the intention and necessity to condemn the land in question." *Burch v. City of San Antonio*, 518 S.W.2d 540, 543-45 (Tex. 1975). A municipal governing body officially expresses itself through its official proceedings, as manifested in orders, resolutions, and minutes. *See Horton*, 468 S.W.2d at 878. The City fails to offer proof of any such proceedings manifesting a determination to condemn the Whittingtons' property for *any* specific use.

14

We conclude that the City has failed to meet its summary judgment burden to conclusively establish that it condemned the Whittingtons' property for a public use.[8]

*Necessity*

Regarding necessity, the Whittingtons principally contend that the City's failure to expressly state in Resolution 010809-11 that condemning their property was "necessary" is alone fatal. They point to the language of local government code section 251.001, the statutory basis for the City's assertion of eminent domain powers. Section 251.001 provides, "*When the governing body of a municipality considers it necessary*, the municipality may exercise the right of eminent domain for a public purpose." Tex. Loc. Gov't Code Ann. § 251.001(a) (emphasis added). Because the City can act only through its governing body and cannot delegate its eminent domain power, *Burch*, 518 S.W.2d at 543-45, and must manifest its official actions through orders, resolutions, and minutes, *Horton*, 468 S.W.2d at 878, the Whittingtons extrapolate that section 251.001 requires proof that the Austin City Council adopted an explicit resolution that it "considered it necessary" to

---

[8] Although the City does not make this argument, we observe that the City's summary judgment evidence includes the Whittingtons' objections to the special commissioners' award, in which the Whittingtons acknowledge that the condemnation purported to be for "the purpose of furnishing downtown parking." However, we do not construe this statement to be an admission by the Whittingtons that the Austin City Council made a legislative determination to condemn their property for such a purpose, as opposed to a response to the actions of the City's attorneys and staff.

The Whittingtons do not make a similar statement in their objections with regard to using the property for a chilling plant. The closest they come is to state that "[i]*f and to the extent* the City tries to justify its taking upon the pretext that it needs a location for a chiller, the Whittingtons would show that there is no need to condemn a full city block in order to construct a chiller." This equivocal statement is insufficient to meet the City's summary judgment burden to establish that it in fact intended to use the property to construct a chilling plant.

15

condemn their property. As further support, the Whittingtons rely on authorities appearing to require (or at least contemplating) proof that a condemnor's governing body made an explicit determination of necessity by resolution or other enactment. *See*, *e.g.*, *Burch v. City of San Antonio*, 508 S.W.2d 653, 655 (Tex. Civ. App.—San Antonio 1974) (predecessor statute to local government code section 251.001 contemplated "a finding by the 'governing authorities' that the taking of private property is necessary"), *rev'd on other grounds*, 518 S.W.2d 540 (Tex. 1975).

The City disputes that section 251.001 requires proof of an explicit council resolution stating that the condemnation was "necessary." It observes that section 251.002 of the local government code provides that chapter 21 of the property code governs procedure in eminent domain cases brought by municipalities. *See* Tex. Loc. Gov't Code Ann. § 251.002 (West 1999). In the City's view, any requirement that it prove that its governing body made a necessity determination by formal resolution would be purely a "procedural" requirement governed by chapter 21. As the City emphasizes, chapter 21 does not state any such requirement. *See generally* Tex. Prop. Code Ann. §§ 21.012-.018. Alternatively, the City asserts that it has met its burden of establishing that the Austin City Council made other "affirmative acts" equivalent to a finding of necessity. *See Maberry v. Pedernales Elec. Coop., Inc.*, 493 S.W.2d 268, 270-71 (Tex. Civ. App.—Austin 1973, writ ref'd n.r.e.); *see also Horton*, 468 S.W.2d at 877-78.[9]

---

[9] In its briefs, the City also asserted that Resolution 010809-11 actually contained an explicit finding of necessity: the statement that the Whittingtons' property "*should be* acquired for a public use." (Emphasis added). We reject this argument. In any event, for reasons we shall subsequently explain, we doubt that a resolution stating merely that a taking is "necessary" (or some equivalent term) to advance an *unspecified* public use could give rise to the presumption of necessity.

16

The Whittingtons' interpretation of the phrase "considers it necessary" in section 251.001 is somewhat misdirected. Section 251.001 is a nonsubstantive recodification of former article 1109b of the revised civil statutes, which had authorized cities to "appropriate private property for public purposes . . . whenever the governing authorities shall deem it necessary." Act of May 15, 1987, 70th Leg., R.S., ch. 149, §§ 1-49, 1987 Tex. Gen. Laws 707-1308; Tex. Rev. Civ. Stat. Ann. art. 1109b (West 1963); *see Coastal Marine Serv. v. City of Port Neches*, 11 S.W.3d 509, 512 (Tex. App.—Beaumont 2000, no pet.); Tex. Loc. Gov't Code Ann. § 1.001 (West 1999). The statutory predecessor to article 1109b had required affirmative pleading and proof of necessity. *See Stone v. City of Wylie*, 34 S.W.2d 842, 844 (Tex. Comm. App. 1931, no writ). These types of pleading and proof requirements were omitted from Article 1109b. Instead, as the *Stone* court observed, the necessity of a particular taking under article 1109b was to be presumed from the determination of the city's governing body that the taking was necessary and could not be reviewed by the court except where the officials acted arbitrarily or capriciously. *Id*. This is the same general concept appearing in *Higginbotham* and *Horton*, among other cases—necessity can be presumed from a determination by a condemnor's governing body that a taking is necessary to advance a public purpose, subject to affirmative defenses. *Higginbotham*, 143 S.W.2d at 88-89; *Horton*, 468 S.W.2d at 877-78. Moreover, the phrase "deem . . . necessary," employed in former article 1109b, tracks language used in case law to distinguish the presumed necessity concept from statutory requirements of affirmative pleading and proof of necessity. *Higginbotham*, 143 S.W.2d at 88-89; *Crary v. Port Arthur Channel & Dock Co.*, 47 S.W. 967, 971 (Tex. 1898). In short, contrary to the Whittingtons' suggestions, we conclude that section 251.001 does not impose an independent requirement that a

condemnor enact an explicit resolution that a taking is "necessary." Instead, it merely reflects the general concepts regarding presumed necessity that are reflected in cases such as *Higginbotham* and *Horton*. *Higginbotham*, 143 S.W.2d at 88-89; *Horton*, 468 S.W.2d at 877-78.

Under these general concepts, the City had the summary judgment burden to conclusively establish that its governing body had made "a determination . . . of the necessity for acquiring certain property." *Higginbotham*, 143 S.W.2d at 88. The City errs in attempting to dismiss this requirement as merely one of "procedure" that should be, but is not, addressed in chapter 21 of the property code. Proof that a condemnor's governing body made a necessity determination is what gives rise to the presumption that the taking was, in fact, necessary. *Coastal Indus. Water Auth.*, 592 S.W.2d at 600; *Higginbotham*, 143 S.W.2d at 88; *Anderson v. Teco Pipeline Co.*, 985 S.W.2d 559, 565 (Tex. App.—San Antonio 1998, pet. denied); *Bevley*, 638 S.W.2d at 121. Absent such proof, the City cannot meet its summary judgment burden on the substantive element that the taking actually advanced its intended public use. Moreover, a number of Texas courts, including this Court, have appeared to imply proof of a necessity determination into the requirements now found in chapter 21 of the property code. *Horton*, 468 S.W.2d at 877-78 (former article 3264 of the revised civil statutes required proof of "a determination by the condemning authority of . . . necessity and the public purpose of the project").[10] Thus, if the City has failed to meet its summary judgment burden to conclusively demonstrate that the Austin City Council made a determination of necessity,

---

[10] Former article 3264, like section 21.012, did not explicitly require such a showing. *Id*.; *see* Act of May 30, 1983, 68th Leg., R.S., ch. 576, 1983 Tex. Gen. Laws 3475 (current version at Tex. Prop. Code Ann. § 21.012).

18

we are compelled to reverse.[11]  We accordingly consider the showing required to establish "a determination . . . of the necessity for acquiring certain property." *Higginbotham*, 143 S.W.2d at 88.

Although differing from the approach this Court has followed, we acknowledge that many Texas courts have appeared to require condemnors to demonstrate an explicit resolution from their governing body that a particular taking is "necessary" or "needed" to advance a specified public purpose. *Mercier v. MidTexas Pipeline Co.*, 28 S.W.3d 712, 720 (Tex. App.—Corpus Christi 2000), *overruled on other grounds by Hubenak v. San Jacinto Gas Transmission Co.*, 141 S.W.3d 172 (Tex. 2004) (resolution of governing board stated that company "needed to build and operate the pipeline to serve a public purpose" and made findings regarding the best route); *Teco Pipeline*, 985 S.W.2d at 565 (proof of both unanimous consent of shareholders and unanimous consent of board of directors stating that pipeline was needed to serve a public purpose, and describing route); *Saunders v. Titus County Fresh Water Supply Dist. No. 1*, 847 S.W.2d 424, 425 (Tex. App.—Texarkana 1993, no writ) (express finding by water supply corporation board that taking was necessary to settle lawsuit); *Anderson v. Clajon Gas Co.*, 677 S.W.2d 702, 704 (Tex. App.—Houston [1st Dist.] 1984, no writ) ("Normally, a resolution of the board of directors . . . is the proper method of determining

---

[11] In *Horton*, we characterized the proof-of-necessity-determination requirement as jurisdictional. 468 S.W.2d at 877-78. A number of our sister courts have done the same. *See Mercier*, 28 S.W.3d at 719-20; *Teco Pipeline*, 985 S.W.2d at 565 & n.5; *Bevley*, 638 S.W.2d at 120. The supreme court's recent decision in *Hubenak* suggests that the requirements under section 21.012 of the property code are properly viewed as prerequisites for condemnation that are mandatory but not jurisdictional, and that noncompliance can be cured by abatement. 141 S.W.3d at 184. Even if the proof-of-necessity-determination requirement is implied in section 21.012, we believe it is distinguishable from the purely procedural requirements addressed in *Hubenak*, as it controls the substantive issue of whether the presumption of necessity arises. *See Teco Pipeline*, 985 S.W.2d at 565 & n.5; *Bevley*, 638 S.W.2d at 120; *Maberry v. Pedernales Elec. Coop., Inc.*, 493 S.W.2d 268, 270-71 (Tex. Civ. App.—Austin 1973, writ ref'd n.r.e.).

19

and declaring public necessity."); *Burch*, 508 S.W.2d at 655-56 (board "has determined the necessity for taking plaintiffs' land"); *see also Stirman v. City of Tyler*, 443 S.W.2d 354, 357-58 (Tex. Civ. App.—Tyler 1969, writ ref'd n.r.e.) (construing two resolutions together to constitute required determination of necessity).[12] Under such a standard, Resolution 010809-11 would clearly be deficient: it contains no determination by the Austin City Council that condemning the Whittingtons' property was necessary to advance a public use, or even what its intended public use is.[13] Nor did the City establish through other means that the Austin City Council made an express determination

---

[12] While not all of these cases involve municipalities, the eminent domain statutes at issue are similar to local government code section 251.001, authorizing condemnation whenever the governing board deems or considers it necessary. *Mercier*, 28 S.W.3d at 719-20 (construing former articles 1435 and 1436 of the revised civil statutes); *Teco Pipeline*, 985 S.W.2d at 565-66 (same); *Saunders*, 847 S.W.2d at 427 (construing sections 11.035 and 54.212 of the water code, which authorize condemnation "necessary for pumping plants, intakes, headgates and storage reservoirs" and "for sewer, water, storm drainage, and flood drainage connections when necessary"); *see also Crary v. Port Arthur Channel & Dock Co.*, 47 S.W. 967, 971 (Tex. 1898) (statute that permitted condemnation to construct channel "so far into the mainland as may be necessary to reach a place for its docks that will afford security from . . . storms" had the same meaning "as if the statute had read, 'and so far into the mainland as the corporation may deem necessary . . .'"); *Valero*, 990 S.W.2d at 856 (looking only to former article 1436 of revised civil statutes, which contains no mention of necessity, as basis for pipeline company's condemnation authority, yet ascertaining whether board determined that taking was necessary).

Some of the cases involving condemnations for pipelines recite the proposition that the resolution need not specify that the condemnation of the condemnees' land *in particular* is necessary for the pipeline project, but they do appear to require that the resolution state the necessity of the pipeline route and detail the route. *Mercier*, 28 S.W.3d at 720; *Teco Pipeline*, 985 S.W.2d at 566.

[13] In support of its argument that it was not required to supply evidence of an express finding of necessity, the City cites *Gardner v. City of Hamilton*, 536 S.W.2d 422 (Tex. Civ. App.—Waco 1976, writ ref'd n.r.e.). In *Gardner*, the Waco court of appeals rejected an argument, derived from *Burch v. City of San Antonio*, that the Hamilton City Council had not followed proper condemnation procedures because its resolution did not state on its face that the condemnation was "necessary." As the Waco court acknowledged, *Gardner* is clearly distinguishable from "the conventional condemnation case"—it involved property already within the city's possession under an easement and where the city was already at work on the public project at issue. *Id*. at 424-25.

20

of necessity. There was no evidence of orders, resolutions, or minutes that might have elaborated on the proceedings underlying Resolution 010809-11. *Horton*, 468 S.W.2d at 878.

However, we will follow our own precedents permitting condemnors to establish that they made a necessity determination through evidence of other "affirmative acts." *See Maberry*, 493 S.W.2d at 270-71; *Horton*, 468 S.W.2d at 877-78; *see also Board of Regents of the Univ. of Houston Sys. v. FKM P'ship, Ltd.*, No. 14-03-00392-CV, 2005 Tex. App. LEXIS 2865, at *19-20 (Tex. App.—Houston [14th Dist.] April 14, 2005, no pet. h.); *Bevley*, 638 S.W.2d at 121-22. Applying them, we conclude that the City has still failed to meet its summary judgment burden to conclusively demonstrate affirmative acts manifesting a necessity determination by the Austin City Council. In suggesting otherwise, the City misconstrues the nature of the proof required under this line of cases.

As proof of "affirmative acts," the City relies on its condemnation petition and other instruments it filed in the proceedings. As previously stated, pleadings are not competent summary judgment evidence. *Laidlaw Waste Sys.*, 904 S.W.2d at 660. In any event, the "affirmative acts" requirement is not satisfied by mere evidence that the City's agents went forward with condemning the Whittingtons' property. Rather, the "affirmative acts" must manifest a determination *by the City's governing body* that the taking was necessary to advance its intended public use. *Compare Houston Lighting & Power Co. v. Fisher*, 559 S.W.2d 682, 685-86 (Tex. Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.) (electric utility's board of directors approved by resolution budget for condemning right-of-ways for transmission lines based on studies showing route; budget further stated that acquisitions were "required" and "advisable"); *Bolin v. Brazoria County*, 381 S.W.2d 206, 209 (Tex. Civ. App.—Houston [1st Dist.] 1964, no writ) (proof that Highway Commission members

21

issued order directing State Engineer to prepare engineering surveys and right-of-way deeds for proposed highway construction and that Commission subsequently contracted to build the road supported conclusion that Commission made required determination of necessity and suitability); *Boucher v. Texas Turnpike Auth.*, 317 S.W.2d 594, 601-02 (Tex. Civ. App.—Texarkana 1958, no writ) (evidence that board of directors of Texas Turnpike Authority issued resolutions stating approval of survey and appraisal of tracts required and that board directed agency personnel to acquire the tracts by purchase or condemnation met requirements); *with Bevley*, 638 S.W.2d at 121-22; *Maberry*, 493 S.W.2d at 271 (no proof that "the governing body, the board of directors, or other authority having power to speak and act for the condemnor" had made determination of necessity); *Horton*, 468 S.W.2d at 877-78 (while recognizing that "[p]roof of such necessity and the public purpose of the project may be made by introducing additional proceedings such as orders, resolutions, and minutes of the county commissioners declaring the public convenience and necessity for the improvement," finding no such evidence).  As the Texas Supreme Court held in *Burch*, a city governing body cannot delegate its eminent domain power to subordinate agencies and employees: "the city council is the authority to exercise the power of eminent domain and must itself officially express the intention and necessity to condemn."  518 S.W.2d at 545; *see also Bevley*, 638 S.W.2d at 121-22 (proof of surveys, landowner negotiations and other right-of-way work was not proof that board of pipeline company had determined the necessity of condemning property for pipeline, in absence of showing that such work had been authorized by the board or could only be performed with such authorization).

We do not perceive these authorities to categorically require the use of magic words such as "necessary" or "needed" within a resolution or other instrument manifesting the governing body's actions, though prudence would perhaps make such language advisable.[14] To the contrary, it would appear sufficient to prove that the condemnor's governing body made a determination (manifested in some form) that, in substance, condemning a particular property would be necessary to advance a specific, identified public use.

The City fails to meet this standard. Other than Resolution 010809-11—which, again, does not indicate the "public use" the condemnation would advance—the City submitted no summary judgment evidence that the Austin City Council had any knowledge of or involvement with the condemnation, much less that it had determined the taking would advance any particular public use. The City offers no "orders, resolutions, and minutes" to that effect, no proof that the city council approved any of the interim steps in the condemnation, and no proof that the council ever approved a budget explicitly to fund the acquisition by condemnation. *See Horton*, 468 S.W.2d at 877-78; *Bolin*, 381 S.W.2d at 209; *Boucher*, 317 S.W.2d at 601-02; *Fisher*, 559 S.W.2d at 685-86. The closest the City comes to meeting this burden is evidence that (1) its agents deposited $7.65 million into the trial court's registry to gain possession; and (2) evidence of City ordinances imposing lower monetary thresholds on purchases and contracts City staff may make without express council approval. *Cf. Bevley*, 638 S.W.2d at 122 (no proof that right-of-way work "could only have

---

[14] *See* Rayburn on Condemnation §§ 6.11 (first and second steps on author's "Condemnation Checklist" are, respectively, "Council Resolution declaring necessity for improvements and acquisition" and "Council Resolution . . . find[ing] necessity of taking"), 6.38 (exemplar form of condemnation resolution containing explicit declaration of necessity for taking).

been done at the insistence of Tenngasco's board").  Even assuming that the deposit fell within the scope of these ordinances, we cannot, on summary judgment, rely on an inference that City staff actually obtained Council approval to make the deposit, much less that it did so to advance any particular public purpose.  *See Pustejovsky*, 35 S.W.3d at 645-46.  The City has failed to meet its summary judgment burden with regard to necessity.

*Conclusion regarding summary judgment*

Because the City has failed to meet its summary judgment burden with regard to both the public use and necessity elements of its condemnation claim, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.[15]

---

[15] We thus need not reach, and express no opinion, as to whether the Whittingtons' summary judgment evidence would raise fact issues regarding the Whittingtons' affirmative defenses.  We acknowledge, as the City urges, that Texas courts have generally imposed a high threshold for proving the affirmative defenses of fraud, bad faith or abuse of discretion where a condemnor has met its initial burden to establish public use and necessity.  *See* Rayburn on Condemnation § 8.07.  This stems from separation of powers concerns: as previously discussed, "where the use for which property is sought to be taken . . . is public, the necessity and expediency of exercising the power, and the extent to which the property thereunder is to be taken, are political or legislative, and not judicial, questions."  *West*, 238 S.W. at 978; *see also Higginbotham*, 143 S.W.2d at 88 (explaining that the question of necessity is "essentially political in nature and not judicial.").  As the Texas Supreme Court has explained,

> The reason for the rule seems to be that: If different courts and juries were allowed to pass on the necessity or advisability of condemning each tract out of the many which go to make up a right of way for a railway line, straight courses from point to point, with the consequent lessening of mileage, would in many, if not all, cases be impossible to secure.  So in the case of depot grounds.  One jury might hold, on competent evidence, that the land in question was not necessary to the purposes of the railroad.  Another might render a like verdict as to any other tract sought to be subjected to its uses, and by such a course the company could be excluded altogether.

*Id*. at 89 (quoting *Cane Belt Ry. Co. v. Hughes*, 72 S.W. 1020, 1020 (Tex. Civ. App. 1903, no writ)).

24

**Prejudgment interest**

> While we have reversed the trial court's judgment, we will proceed, in the interest of judicial efficiency and economy, to address the Whittingtons' second issue regarding prejudgment interest in the event that it arises again on remand.

> Prejudgment interest is awarded to the landowner in condemnation cases if the landowner appeals from the special commissioners' award, the condemnor opts to deposit the amount of the special commissioners' award into the court's registry to gain the right of possession, and the trial court ultimately awards damages in excess of the special commissioners' award. *See generally A Guide to Recent Changes and New Challenges in Texas Prejudgment Interest Law*, 30 Tex. Tech L. Rev. 71, 118 (1999). The landowner does not receive prejudgment interest on the amount of the deposit, as he or she has the right to use those funds, but only on any additional amount awarded by the trial court, which, in concept, represent funds the landowner was wrongfully deprived of prior to judgment. *Id*.[16] The landowner's entitlement to prejudgment interest derives not from statute or common law, but from article I, section 17 of the Texas Constitution. *State v.*

---

When addressing any such issues on remand, the trial court must be cognizant of these limitations on the judicial branch's power. However, judicial power properly extends to determining such issues as the City's true intended use of the Whittingtons' property and whether that use constitutes a public or private use, *see*, *e.g.*, *Golddust*, 41 F.3d at 964-66, and ensuring that the City strictly adheres to the statutory and constitutional requirements governing its exercise of eminent domain power. *Horton*, 468 S.W.2d 878. The latter not only protects the landowner's rights, but ensures that the judicial branch can review the issues within the proper scope of its power. *Id*.

[16] By contrast, the condemnor is not entitled to prejudgment interest if the trial court awards damages less than the special commissioners' award. This is because the condemnor was not required to pay the deposit and take possession of the property, but retained control of its money and could have opted to realize other benefits from it. *Id*.

25

*Hale*, 146 S.W.2d 731, 738 (Tex. 1941); *City of Houston v. Texan Land & Cattle Co.*, 138 S.W.3d 382, 388-89 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

The longstanding rule in Texas condemnation cases has been that prejudgment interest begins to accrue on the date of the constitutional taking, the date the condemnor pays the amount of the special commissioners' award into the court's registry and gains the right to possess the property. *Hale*, 146 S.W.2d at 738; *Texan Land & Cattle Co.*, 138 S.W.3d at 389; *City of Austin v. Foster*, 623 S.W.2d 672, 674-75 (Tex. Civ. App.—Austin 1981, writ ref'd n.r.e.). Consistent with this rule, the trial court awarded the Whittingtons prejudgment interest accruing from January 24, 2002, the date the City deposited the amount of the special commissioners' award in the court registry and gained the right of possession pending further litigation. Tex. Prop. Code Ann. § 21.021.

The Whittingtons contend that prejudgment interest should instead accrue beginning on July 22, 2000, which they represent was 180 days after the City first sent them written notice of its intent to condemn the property. For this proposition, they rely on *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507 (Tex. 1998). In *Johnson & Higgins*, the Texas Supreme Court held that prejudgment interest awarded under "the common law" should conform to the statutory accrual and compounding formulas applicable to suits for wrongful death, personal injury, and property damages. *Id*. at 530-32. Under that statutory accrual formula, prejudgment interest generally begins to accrue "on the 180th day after the date the defendant receives written notice of a claim or on the date the suit is filed, whichever is earlier." Tex. Fin. Code Ann. § 304.104 (West. Supp. 2004-05). While the rate and compounding method for prejudgment interest

26

awards in condemnation cases is governed by a specific statute, *see id.* § 304.201 (West Supp. 2004-05), there is no statutory provision similarly addressing the accrual method for such awards. The Whittingtons deduce that the accrual of prejudgment interest awards in condemnation cases must be governed by the common law and, hence, *Johnson & Higgins*. We disagree.

In *Texan Land & Cattle Co.*, the Fourteenth Court of Appeals rejected a similar argument. It reasoned that (1) prejudgment interest in condemnation cases is based upon the constitutional requirement of adequate compensation, not the common law; and (2) consistent with this, the traditional accrual rule in condemnation cases is triggered by a constitutionally cognizable taking. 138 S.W.3d at 388-89. It contrasted this constitutional goal of adequate compensation with the statutory accrual concepts incorporated into the common law through *Johnson & Higgins*, which are a system of legislatively-crafted settlement incentives that do not necessarily yield adequate compensation. 138 S.W.3d at 388-89. Also, observing that *Johnson & Higgins* did not purport to overrule or limit the traditional accrual rule in *Hale*, the court concluded that "[w]ithout additional guidelines from the supreme court, we follow *Hale* and its progeny." *Id*. at 389 n.5.

We find the reasoning of our sister court persuasive. Additionally, it is unclear to us how the statutory accrual scheme adopted by *Johnson & Higgins* could be applied within the hybrid civil action-administrative procedural framework of condemnation cases. *See A Guide to Recent Changes and New Challenges in Texas Prejudgment Interest Law*, 30 Tex. Tech L. Rev. at 117-18 (identifying practical problems and deducing that *Johnson & Higgins* is best construed as not extending to condemnation cases). We overrule the Whittingtons' second issue.

## CONCLUSION

Because the trial court erred in granting partial summary judgment that the City had authority to condemn the Whittingtons' property, we reverse and remand its judgment for further proceedings consistent with this opinion. We overrule the Whittingtons' prejudgment interest issue.

_____

Bob Pemberton, Justice

Before Justices Kidd, B. A. Smith and Pemberton;
     Justice Kidd Not Participating

Reversed and Remanded

Filed:   September 30, 2005