In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00925-CV




CITY OF SEABROOK, TEXAS, Appellant

V.

PORT OF HOUSTON AUTHORITY, Appellee




On Appeal from County Civil Court at Law No. 3
Harris County, Texas
                                         Trial Court Cause No. 774,891




DISSENTING OPINION ON EN BANC CONSIDERATION

          I respectfully dissent. I would reverse the order denying the plea to the
jurisdiction of appellant, the City of Seabrook (“the City”), and render judgment that
the City’s jurisdictional plea be granted and that the underlying condemnation
proceedings brought by the Port of Houston Authority (“the Port”) against American
American Acryl NA, L.L.C. and American Acryl L.P. (together, “American”) be
dismissed.
Construction of Water Code in Section 62.106(d)
 
A.      The Issue
          This case turns on whether a navigation district’s compliance with Water Code
section 62.106(d)


—which provides that “[n]o right of way may be condemned” by
a navigation district without the prior consent of a city through which the right-of-way runs—is a jurisdictional prerequisite to a district court’s adjudication of
condemnation proceedings brought by the navigation district against a landowner
whose property lies within a city.
          Section 62.106, “Condemnation Proceedings,” provides:
(a)The district may exercise the power of eminent domain to
condemn and acquire the right-of-way over and through
any and all public and private land necessary:
 
(1)for the improvement of any river, bay, creek, or
stream;
 
(2)for the construction and maintenance of any canal or
waterway; and
 
(3)for any and all purposes authorized by this chapter.
. . .
 
(d)No right-of-way may be condemned through any part of an
incorporated city or town without the consent of the lawful
authorities of that city or town.

Tex. Water Code Ann. § 62.106(a), (d) (Vernon 2004) (emphasis added). The City
views section 62.106(d)’s consent prerequisite as jurisdictional. Consequently, it
argues that the trial court lacks subject-matter jurisdiction over the Port’s
condemnation action unless and until the Port obtains the City’s consent. In contrast,
the Port argues that the section’s consent prerequisite is not jurisdictional, assuming
that section 62.106(d) applies and controls (a position that the Port also contests and
that the majority opinion does not reach). 
          As the majority recognizes, whether the City’s consent to condemnation is a
jurisdictional prerequisite determines, in turn, whether we have subject-matter
jurisdiction over this interlocutory appeal. See Tex. Dep’t of Crim. Justice v. Simons,
140 S.W.3d 338, 349 (Tex. 2004) (holding that “an interlocutory appeal cannot be
taken from the denial of a plea to the jurisdiction that does not raise an issue that can
be jurisdictional” and that appellate court must dismiss interlocutory appeal “when
the issue raised [in the jurisdictional plea] cannot implicate subject matter
jurisdiction”); accord Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser, 140
S.W.3d 351, 365 (Tex. 2004). Because I agree with the City that the consent
provision in section 62.106(d) is jurisdictional and that, therefore, the trial court does
not have jurisdiction to adjudicate the underlying condemnation proceedings against
American, I would grant the City’s plea to the jurisdiction and render judgment that
the trial court dismiss the proceedings.
B.      Jurisdictional Nature of Consent Provision in Section 62.106(d)
          To prevail in condemnation proceedings, the condemning entity must prove
that it has satisfied the various formal prerequisites necessary to proceed in the trial
court. Whittington v. City of Austin, 174 S.W.3d 889, 896 (Tex. App.—Austin 2005,
pet. denied); see also Hubenak v. San Jacinto Gas Transmission Co. (Hubenak III),
141 S.W.3d 172, 182 (Tex. 2004). The courts are constrained to give effect to each
of these requirements in construing the lawful powers conferred upon condemning
entities, such as navigation districts, proceeding under section 62.106 of the Texas
Water Code. See Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864,
865–66 (Tex. 1999); Wood v. Bird, 32 S.W.2d 271, 273 (Tex. Civ. App.—El Paso
1930, no writ.). Moreover, these requirements are mandatory. See Hubenak III, 141
S.W.3d at 180 (construing similar statutory provisions in section 21.012(b) of Texas
Property Code as mandatory requirements upon commencement of condemnation
proceeding); Brazos River Conservation & Reclamation Dist. v. Costello, 143 S.W.2d
577, 580 (Tex. 1940) (holding that statute vested district court with jurisdiction to
determine that every prerequisite of Constitution was fully complied with before
property could be put to public use, i.e., that requirements were all mandatory). 
          Although all prerequisites to a condemnation suit are mandatory, not all are
jurisdictional. See Hubenak III, 141 S.W.3d at 180 (construing “unable-to-agree”
provision in Property Code as mandatory, but not jurisdictional); see also
Whittington, 174 S.W.3d at 896 (observing that at least some prerequisites to exercise
of eminent-domain power are mandatory, but not jurisdictional). As the supreme
court has pointed out, “The failure of a non-jurisdictional requirement mandated by
statute may result in the loss of a claim, but that failure must be timely asserted and
compliance can be waived.” Loutzenhiser, 140 S.W.3d at 359. By contrast, “the
failure of a jurisdictional requirement deprives the court of the power to act (other
than to determine that it has no jurisdiction), and ever to have acted, as a matter of
law.” Id. If a petition does not allege jurisdictional facts, the plaintiff’s suit is subject
to dismissal for lack of subject-matter jurisdiction on a plea to the jurisdiction unless
it is possible to amend the pleadings to confer jurisdiction. Martinez v. City of El
Paso, 169 S.W. 3d 488, 492 (Tex. App.—El Paso 2005, pet. denied).
          I agree with the majority that, after Dubai Petroleum Co. v. Kazi, the failure to
comply with a non-jurisdictional statutory requirement—even a mandatory one—may
result in the loss of a claim, but that such non-compliance does not deprive the trial
court of subject-matter jurisdiction over that claim. See Kazi, 12 S.W.3d 71, 76–77
(Tex. 2000); accord Loutzenhiser, 140 S.W.3d at 359. The issue here, however, is
not the City’s loss of a claim against the Port. The issue is the City’s loss of its
sovereign right to consent to the Port’s exercise of the power of eminent domain
within the City’s boundaries—a right conferred upon it (and upon all incorporated
cities and towns) by the Legislature as a restriction on navigation districts’ exercise
of the power of eminent domain under section 62.106 of the Water Code. 
          The essential distinction between this case and Hubenak III is that
condemnation proceedings adjudicate the rights of landowners vis a vis governmental
authorities exercising the power of eminent domain. They do not adjudicate the
rights of sovereign entities vis a vis each other. Whether the City is entitled both to
notice of the Port’s intent to condemn property within its boundaries and the
opportunity to refuse its consent to those condemnation proceedings is a question of
law that goes to the scope of the power of eminent domain granted the Port by the
Legislature, not to the propriety of the Port’s exercise of that power against a
landowner. Because I agree with the City that its consent is a jurisdictional condition
precedent to the Port’s exercise of the power of eminent domain, and because the Port
failed to comply with that condition precedent, I would hold that the trial court lacks
subject-matter jurisdiction over the Port’s condemnation proceedings against
American and that the proceeding must, therefore, be dismissed.
          Since Kazi, the Supreme Court of Texas has indicated that whether a statutory
requirement is a jurisdictional or substantive bar depends on the Legislature’s intent. 
See Loutzenhiser, 140 S.W.3d at 359; see also Kazi, 12 S.W.3d at 76. Indeed, the
dominant rule controlling the construction of a statute is to ascertain the intention of
the Legislature expressed in the statute. Costello, 143 S.W.2d at 580 (construing
statute authorizing condemnation of property by eminent domain). The inquiry
begins with the statutory language, including whether any consequences for non-compliance are specified. Loutzenhiser, 140 S.W.3d at 359; see also Fitzgerald, 996
S.W.2d at 865–66 (holding that court’s primary goal in interpreting statute is to
ascertain and to effectuate Legislature’s intent and that, in ascertaining legislative
intent, courts begin with statute’s plain language). Another indicator of the
Legislature’s intent, which our Court has found particularly pertinent when the statute
is silent on the consequences of non-compliance, is the statute’s purpose. See
Loutzenhiser, 140 S.W.3d. at 360; Harris County Emergency Servs. Dist. No. 1 v.
Miller, 122 S.W.3d 218, 223 (Tex. App.—Houston [1st Dist.] 2003, no pet.). The
statute may be read in connection with the constitutional provisions authorizing its
enactment, and those constitutional provisions may be read into and considered a part
of the statute. Costello, 143 S.W.2d at 580.
          The power of eminent domain is a constitutional power essential to state
governments and “inseparable from sovereignty,” but its sphere is limited. United
States v. Carmack, 329 U.S. 230, 236–38, 67 S. Ct. 252, 254–55 (1946); see U.S.
Const. amend. V; Tex. Const. art. I, § 17. The power of eminent domain must be
conferred either expressly or by necessary implication by the Legislature. Coastal
States Gas Prod. Co. v. Pate, 309 S.W.2d 828, 831 (Tex. 1958); Saunders v. Titus
County Fresh Water Supply Dist. No. 1, 847 S.W.2d 424, 427 (Tex. App.—Texarkana
1993, no writ); Wood, 32 S.W.2d at 273 (holding that right of eminent domain may
not be exercised unless plain letter of law permits it). “[T]he legal requirements
governing condemnation proceedings ‘must be strictly followed.’” Whittington, 174
S.W.3d at 899 (quoting Horton v. Mills County, 468 S.W.2d 876, 878 (Tex.
App.—Austin 1971, no writ)). Condemnation statutes need not, however, be given
the narrowest meaning of which they are susceptible. Pate, 309 S.W.2d at 831. 
Rather, “[t]he language used by the Legislature may be accorded a full meaning that
will carry out its manifest purpose and intention in enacting the statute, but the
operation of the law will then be confined to cases which plainly fall within its terms
as well as it spirit and purpose.” Id. The constitutional and statutory limitations on
a state entity’s exercise of the power of eminent domain impliedly prohibit takings
outside those limitations. See Whittington, 174 S.W.3d at 896 (“By requiring takings
to be solely for public purposes, these limitations impliedly prohibit takings for
private purposes or benefit.”). 
          The City contends that the Port condemned American’s land pursuant to
section 62.106 of the Water Code.


 The purpose of section 62.106 is to provide for
the exercise of the power of eminent domain by a navigation district operating under
the provisions of article XVI, section 59 of the Texas Constitution, but within the
confines of the power conferred on the district by section 62.106. Specifically, in
section 62.106, the Texas Legislature has conferred the power on navigational
districts “to condemn and acquire the right-of-way over and through any and all
public and private land necessary” for the improvement of a “any river, bay, creek,
or stream for the construction and maintenance of any canal or waterway,” and for
any other purpose authorized by Chapter 62 of the Water Code, “instituted under the
direction of the [navigation and canal] commission and in the name of the district,”
subject to the condition that no right-of-way may be condemned under section 62.106
“through any part of an incorporated city or town without the consent of the lawful
authorities of that city or town.” Tex. Water Code ann. §§ 62.001(definitions),
62.106(a),(b). The limits of that power are set out as prerequisites to the maintenance
of condemnation proceedings. Under the plain language of section 62.106, no
property within an incorporated city or town may be condemned by a navigation
district except as necessary to effectuate the purposes set out in that section—and
then only with the consent of the lawful authorities of the incorporated city or town
within whose boundaries the land the district seeks to condemn lies. See id. §
62.106(d). A navigation district operating under article XVI, section 59 simply has
no statutorily-conferred authority to condemn land under section 62.106(d) without
obtaining such consent.
          Here, the Port did not obtain the City’s consent to the condemnation
proceedings against American. Therefore, if the consent prerequisite is jurisdictional,
the proper remedy is to dismiss the Port’s futile eminent-domain proceedings against
American. If the City’s consent is not jurisdictional, however, the Port can continue
with its condemnation proceedings, and the City simply loses its chance to object to
the Port’s failure to obtain its consent because the statute provides no remedy for such
a failure—unless, that is, the City learns of the proceedings, successfully intervenes
and persuades the trial court that the proceedings should not go forward. In the latter
case, the Port’s failure to obtain the City’s consent is a trivial matter without
consequences; in the former, it is a matter of jurisdictional consequence. 
          The fact that the Legislature did not expressly provide a mechanism for cities
to assert a right intended to protect their sovereignty within their borders confirms the
conclusion that 62.106(d)’s consent prerequisite is jurisdictional, not that it is trivial. 
Cf. City of Laredo v. Almazan, 179 S.W.3d 132, 135 (Tex. App.—San Antonio 2005,
no pet.) (concluding that statute was not jurisdictional because, among other things,
it provided non-compliance penalty within statutory scheme). For example, in no
case does either the Water Code or the Property Code provide an express means for
cities to assert the right to consent to right-of-way condemnation through their
territory. Generally speaking, the law contemplates that water districts seeking to
condemn a right-of-way file a petition against the private property owner, not the
non-owner city through whose territory the right-of-way will run.


 There is no
express provision in the Water Code’s or Property Code’s condemnation provisions
for making the affected, non-owner city a party to the condemnation proceeding. 
          Although this Court has no jurisdiction in this interlocutory appeal to determine
whether the City had the right to intervene in this condemnation suit,


 and I do not
purport to make such a determination, I observe that there is no mechanism in the
Water Code or Property Code that provides for such intervention, or otherwise
ensures that a condemning authority must give a municipality notice of its intentions,
or provides any avenue for a city to protest a condemnation proceeding by another
governmental entity intruding upon its sovereignty. 
          It is significant that the sole court that expressly considered the purpose of
section 62.106(d)’s predecessor in the context of condemnation proceedings has
concluded that the statute was enacted “for the benefit of the municipality[,]” so that
there would “be no conflict in the use to which land in a city could be put, as between
a navigation district and a city.” Banta v. Chambers-Liberty Counties Navigation
Dist. (Banta I), 445 S.W.2d 61, 62 (Tex. Civ. App.—Beaumont 1969), rev’d on other
grounds, (Banta II), 453 S.W.2d 134 (Tex. 1970).


 If, indeed, section 62.106(d) was
enacted for the benefit of municipalities like the City, but that provision’s consent
prerequisite is not jurisdictional, then a municipality’s right to consent is entirely
illusory because the municipality itself is not made a necessary party to the
proceedings by the terms of the statute, the statute provides no means for the
municipality to assert the violation of its right, and no statutory remedy is provided
for a district’s violation of the right to consent. 
          It is perverse to interpret section 62.106 as providing an illusory right without
a remedy. It is equally perverse to interpret section 62.106 as requiring that a
municipality that is not a necessary party to condemnation proceedings, that has no
statutory right or duty to assert its “claim” under the statute, and that has no statutory
remedy for a violation of its rights, nevertheless loses its statutorily mandated veto
power over a navigation district’s assertion of the power of eminent domain within
the municipality’s boundaries if the district chooses not to seek that consent and the
municipality does not find out before the land is condemned, find a vehicle to protest
the violation of its right to consent, and timely assert that right. Either way, the result
is absurd. Courts should not read a statute to create an absurd result. Loutzenhiser,
140 S.W.3d at 356 (quoting Barshop v. Medina County Underground Water
Conservation Dist., 925 S.W.2d 618, 629 (Tex. 1996)). Rather, “[i]n enacting a
statute, it is presumed that . . . (3) a just and reasonable result is intended.” Tex.
Gov’t Code Ann. § 311.021(3) (Vernon 2005). “[W]ords, no matter how plain, will
not be construed to cause a result the Legislature almost certainly could not have
intended.” Bridgestone/Firestone, Inc. v. Glyn-Jones, 878 S.W.2d 132, 135 (Tex.
1994) (Hecht, J., concurring) (quoted in Loutzenhiser, 140 S.W. 3d at 356 n.20).
          Furthermore, I disagree that the Hubenak III holding has the broad sweep that
the majority attributes to it and that it automatically renders all the mandatory
requirements for the condemnation of land non-jurisdictional, regardless of the
purpose of a requirement, the person or entity at whom it is directed (i.e., a party or
non-party, sovereign entity or landowner), or the existence or non-existence of a
statutory means for protesting a violation of the statute or a statutory remedy for the
violation. First, the Hubenak III court held only that the “unable-to-agree”
requirement—which applies to the relationship between the condemning authority
and the landowner—was non-jurisdictional. See Hubenak III, 141 S.W.3d at 180. 
The court did not summarily declare all statutory condemnation requirements to be
non-jurisdictional. See id.; see also Whittington, 174 S.W.3d at 896. 
          Second, the unable-to-agree requirement requires the condemning authority to
show, as a prerequisite to maintaining a condemnation suit, that it and the landowner
could not agree on condemnation damages. See Tex. Prop. Code Ann. § 21.012(a)
(Vernon 2004). The condemning authority and the landowner are both necessary
parties to the condemnation proceeding. See id. § 21.012. Under both Water Code
chapter 62 and the Property Code, in contrast, a city that has the right to give or to
withhold its consent to right-of-way condemnation within its territory is not
contemplated, within the applicable statutes, as a party to the condemnation
proceeding. See Tex. Water Code Ann. §§ 62.106, 62.107 (Vernon 2004); Tex.
Prop. Code Ann. §§ 21.011, 21.012. 
          Third, the purpose of the unable-to-agree requirement is “to ‘forestall litigation
and to prevent needless appeals to the courts when the matter may have been settled
by negotiations between the parties.’” Hubenak III, 141 S.W.3d at 184. Protesting
the failure of a district to comply with this requirement within the context of
condemnation proceedings does not create more litigation. Rather, the condemnation
proceedings provide both a means for a landowner to protest that the condemning
authority has not satisfied the unable-to-agree requirement and a statutory remedy for
a wrongful taking. By contrast, the purpose of Water Code section 62.106(d)’s
consent provisions is to assure that there is “no conflict in the use to which land in a
city could be put, as between a navigation district and a city.” Banta I, 445 S.W.2d
at 62. Because condemnation proceedings provide neither a means for a city to
protest that it did not consent to a navigation district’s condemnation of land within
its boundaries nor a remedy for the district’s violation of the consent provisions, the
purpose of the consent provision cannot be satisfied within the context of
condemnation proceedings and continuing the proceedings does not resolve the legal
issues raised by non-consent. Given these critical differences between the parties and
the statutory provisions involved, I would hold that Hubenak III’s cited holding does
not apply to section 62.106(d)’s consent prerequisite.It is vital that courts distinguish between the positions of landowners whose
property a sovereign seeks to condemn in valid condemnation proceedings and the
positions of governmental entities, like the City, whose sovereign rights are infringed
by constitutionally and statutorily invalid condemnation proceedings. At least eight
times the Water Code, along with other codes’ provisions regulating various
specialized districts, requires a city’s consent before a district may perform various
acts, condemnations, or services within the city’s territorial or extraterritorial
jurisdiction.


 Although these laws sometimes provide for an alternative means for the
district’s act, condemnation, or service to be accomplished within a city’s
extraterritorial jurisdiction when the city fails to consent,


 no Water Code provision
provides such an alternative means to authorize the district’s act, condemnation, or
service within a city’s territory. Rather, the Water Code and the related codes
mentioned above consistently require a city’s consent to these acts—including certain
right-of-way condemnations


—when they are conducted within the city’s territory,
and they do not provide for an alternative means to act if consent is withheld. These
statutes make it clear that the Legislature intended to require the consent of cities to
certain invasive acts, including condemnation proceedings by another sovereign
entity, within their own territory, and so to protect them in that situation. The only
way to carry out this clear intent satisfactorily is to construe section 62.106’s consent
prerequisite to be jurisdictional. 
          For all the foregoing reasons, I would hold that the consent of an incorporated
city or town to a taking by a navigation district within its boundaries is a condition
precedent to the trial court’s exercise of jurisdiction over condemnation proceedings
brought by the navigation district against a landowner and that proceedings brought
without such consent must be dismissed for lack of subject-matter jurisdiction. Nor
am I persuaded to the contrary by the majority’s arguments, which I address below.
Objections to Majority’s Reasoning
          In addition to drawing the conclusion that the consent provision in section
62.106(d) is jurisdictional, rather than non-jurisdictional, as the majority holds, I
disagree with the majority’s reasoning in support of its judgment on a number of
important points.
A.      Interference with “Settled” Property Rights
          I disagree with the majority’s reasoning that the potential instability to “settled”
property interests that might arise from finding the consent prerequisite jurisdictional
necessarily requires the conclusion that the prerequisite is not jurisdictional. The Port
raises a related argument, that the purpose of its rights to exercise the power of
eminent domain will be thwarted by finding section 62.106(d)’s consent prerequisite
to be jurisdictional. 
          I fully recognize the concern expressed by the supreme court in Hubenak III
that “[i]f the ‘unable to agree’ requirement [contained in section 21.012(a) of the
Property Code’s condemnation provisions] were necessary to confer subject matter
jurisdiction, then judgments in condemnation proceedings would be subject to
collateral attack” by landowners. Hubenak III, 141 S.W.3d at 182 (emphasis added). 
But the possibility of undoing settled condemnation proceedings by a collateral attack
by a landowner protected by statutory rights and remedies is not the issue here. 
          Section 62.106(d) plainly states that the navigation district’s power of eminent
domain is subject to the consent of the “lawful authorities” by the city. There is no
statutory grant of power to a navigation district to condemn a right of way through
a part of a city without such consent. See Tex. Water Code Ann. § 62.106(d). As
shown above, the power of eminent domain is a constitutional power to take property,
and that power must be conferred either expressly or by necessary implication by the
Legislature. See Pate, 309 S.W.2d at 831; Saunders, 847 S.W.2d at 427. If a
navigation district, having been granted a limited statutory power of eminent domain,
exceeds its constitutional and legislative grant of authority, it necessarily acts ultra
vires and violates the Constitution. See Saunders, 847 S.W.2d at 427–29 (holding
that taking of property by water district pursuant to eminent-domain powers without
statutory authority violated Texas Constitution Article I, section 17); see also City of
Wichita Falls v. Thompson, 431 S.W.2d 909, 911–13 (Tex. Civ. App.—Fort Worth
1968, writ ref’d n.r.e.) (holding that although power of eminent domain inheres in
sovereignty and is limited by constitutional provisions only, neither State nor its
subdivision may exercise power unless law-making authority has conferred such right
by statutory enactment; exercise of such rights beyond delegated powers is abuse of
discretion). It is, therefore, not at all unjust that the remedy for a navigation district’s
ultra vires action in taking property within a city without the city’s consent is a
collateral attack by the sovereign whose authority the district has infringed that
undoes the exercise of that illegitimate authority and requires the district to obtain
consent before proceeding with its plans. Such proceedings cannot be called “settled”
merely because a navigation district succeeds in concealing its violation of the statute
until the condemnation proceedings have ended.
          Indeed, the Texas Supreme Court long ago indicated that a collateral attack is
to be expected if a condemning authority infringes the rights of another sovereign in
the exercise of its power of eminent domain. See City of Galveston v. Mann, 143
S.W.2d 1028, 1034 (Tex. 1940) (holding that erection by city of pier beyond seawall,
hence “on and over” waters of Gulf of Mexico and over soil beneath waters owned
by State and held in trust for all people, “would be an encroachment, at the least, upon
the prima facie property rights of the sovereign, that is, the State, so far as the tide
lands are concerned, and an encroachment upon the unquestioned property rights of
the State in so far as such structure is proposed to be projected out into the deep
waters of the sea . . . subject to be removed at the instance of the State, whether the
same should tend to obstruct navigation or otherwise”). The supreme court further
held in Mann that, by authorizing Galveston to regulate and to police structures built
in the waters adjacent to the beach of the city, “it is not to be implied that the
Legislature intended to give approval to any invasion of the rights of the State.” 143
S.W.2d at 1034; Crary v. Port Arthur Channel & Dock Co., 47 S.W. 967, 971 (Tex.
1898) (holding that consent of United States Secretary of War was not required by
statute authorizing Port Arthur Channel and Dock Company to condemn land and
water right of way for construction of channel and docks, but nonetheless warning
that “[s]hould the government, after appellant’s property has been taken, see proper
to obstruct the enterprise and prevent either the completion of the work or the use of
the channel, the land would be discharged of its burden”). The same reasoning and
policy concerns apply here and mandate the conclusion that a navigation district’s
condemnation of land within a city without the city’s consent is an infringement of
the sovereign rights of the city. 
          By contrast, if as the majority holds, a navigation district’s infringement of a
city’s right to consent results in the “settled” condemnation of land within the city,
the city whose right to consent has been denied is left with no remedy at all for the
infringement of its sovereign right to consent. The majority, however, does not
acknowledge the necessary conclusion flowing from its position—namely, that
section 62.106(d) thus becomes a provision that asserts a right without a remedy,
which is no right at all. Again, we should not interpret a statute in such a way as to
create an absurd result. See Loutzenhiser, 140 S.W.3d at 356; see also
Bridgestone/Firestone, 878 S.W.2d at 135 (“[I]n some circumstances, words, no
matter how plain, will not be construed to cause a result the Legislature almost
certainly could not have intended”) (quoted in Loutzenhiser, 140 S.W.3d at 356 n.20);
Tex. Gov’t Code Ann. § 311.021(3)-(4) (“In enacting a statute, it is presumed that
. . . (3) a just and reasonable result is intended . . . [and] (4) a result feasible of
execution is intended . . . .”).
          Reading section 62.106(d) to be jurisdictional, by contrast, does promote the
purpose of the specific statutory section, which was enacted “for the benefit of the
municipality[,]” so that there would “be no conflict in the use to which land in a city
could be put, as between a navigation district and a city.” Banta I, 445 S.W.2d at 62. 
This policy is at least as important as the policy of protecting settled property interests
from collateral attack. Moreover, “[o]ur role here . . . is not to second-guess the
policy choices that inform our statutes or to weigh the effectiveness of their results;
rather, our task is to interpret those statutes in a manner that effectuates the
Legislature’s intent”


—which, with regard to section 62.106(d), is to benefit the
municipality by ensuring that no conflicts arise “in the use to which land in a city
could be put, as between a navigation district and a city,”


 and thus to protect the
sovereign powers of cities to determine the use to which land within their boundaries
may be put.
 
B.      Right to Consent as Bargaining Chip for Landowner
          The majority also opines that the Legislature’s real intention in enacting section
61.106(d)’s consent prerequisite was to benefit landowners, not cities. The majority
states:
A simpler interpretation is that the provision confers standing
upon a city to be heard, or that any municipal interest can be
represented by the private landowner in a timely fashion, who if
successful, will keep his land or command an above fair-market-value premium for its sale.

In light of the considerations set out above, this argument is simply untenable. A city
should not be forced to rely on a private landowner to assert such an important right
when the landowner might not realize that the city had the right, might opt not to
prosecute the right, or might not contest the condemnation proceeding itself. This is
yet another indication that the Legislature intended for section 62.106(d)’s consent
provision to be jurisdictional, not non-jurisdictional, as the majority contends.
C.      Intervention to Protect Sovereignty
          I also disagree with the majority’s argument that because the City has
intervened in this condemnation proceeding its rights are adequately protected. The
majority states, “It is hard to imagine that the Legislature intended to render an entire
class of condemnation judgments void for failure to obtain consent when a timely
intervention would do . . . .”


 Along the same lines the majority posits that “reading
[section 62.106(d)] to withhold trial court jurisdiction is unnecessary to protect the
interests of local government” because, among other things, cities may intervene in
condemnation proceedings. 
          First, this Court should hesitate to speculate on whether a municipality may,
in fact, intervene in a condemnation proceeding when the issue is not before us
because, as is explained above, we lack subject-matter jurisdiction in this
interlocutory appeal to consider the trial court’s denial of the motion to strike the
City’s intervention. See Ahmed v. Shimi Ventures, L.P., 99 S.W.3d 682, 688 (Tex.
App.—Houston [1st Dist.] 2003, no pet.) (“We must strictly construe [Civil Practice
and Remedies Code] section 51.014’s grant of interlocutory jurisdiction because the
Legislature intended it to be a narrow exception to the general rule that only final
judgments are appealable.”). 
          Second, the fact that the affected City happens to be an intervening party in this
suit does not provide protection to any other cities, including those that do not
discover condemnation proceedings until after judgment. I note that, even here, the
Port contested the City’s intervention in this suit because the City had not been a
party to the administrative portion of the condemnation proceeding. That is, the Port
argued below that the City had, in effect, no ability to participate in the condemnation
proceedings and no way to enforce the right to consent that the Legislature had given
it in section 62.106(d). 
          Moreover, the majority’s opinion implies that a city has the burden to discover
and to assert its right to consent in a timely fashion, even in the absence of a statutory
provision for its protection, in the event its right is infringed. Under the majority’s
reasoning, if a city does not timely intervene to assert the lack of consent, it loses its
right to object. In the case of a city that does not learn of the condemnation
proceedings before they are complete, this translates into the unknowing waiver of a
statutory right—the opposite of the fundamental rule that waiver of a constitutional
or statutory right consists of a party’s “intelligently, voluntarily, and knowingly
relinquishing a known right or acting inconsistent with claiming that right.” Fort
Worth Indep. Sch. Dist. v. City of Fort Worth, 22 S.W.3d 831, 844 (Tex. 2000). 
          Above all, the majority’s conclusion that a city’s rights are adequately
protected by the possibility that it might be allowed to intervene in condemnation
proceedings trivializes the consent provision, if it does not render it utterly
meaningless, in sharp contrast to the supreme court’s interpretation of the importance
of such provisions, as set out in Mann, 143 S.W.2d 1028 (Tex. 1940). In Mann, the
City of Galveston proposed to build a park with a pier extending beyond the seawall
into the Gulf of Mexico over land belonging in part to the State and to finance the
construction with general obligation bonds secured by a deed of trust. Id. at 1029–31. 
The Attorney General, however, refused to approve the bonds, as he was required to
do by statute, and a mandamus proceeding was brought to compel him to approve
them. Id. at 1029. The Supreme Court of Texas held that the Legislature lacked
power to transfer to the city land held by the State in trust for all the people; the court
further held that the structures would be at least a prima facie encroachment upon the
prima facie rights of the sovereign over the tidelands and upon the unquestioned
property rights of the sovereign over the land beneath the sea and, for that reason, the
structures would be subject to removal at the instance of the State. Id. at 1032–34. 
The consent of the Attorney General to the bonds was designed “to protect the
particular locality and its habitants against the imposition of unauthorized or illegal
obligations” and to give assurance to intending purchasers that they would acquire
indefeasible title to bonds purchased. Id. at 1035. The court concluded, “[t]he duty
thus imposed upon the Attorney General is important and is in no sense perfunctory.” 
Id.
          As in Mann, the duty imposed by section 62.106 upon navigation districts to
obtain the consent of cities within whose boundaries they intend to condemn property
is “in no sense perfunctory” because it assures the protection of a city against the
assertion of another entity’s sovereign authority, that could impair the city’s own
development plan, and because it likewise assures the protection of the city’s
inhabitants against obligations that might be imposed upon them by the navigation
district without the city’s consent. See Tex. Water Code Ann. § 62.106. Thus,
unlike the majority, I do not believe that section 62.106 places a burden on a city to
find out about the condemnation plans of a navigation district within its territory and
to object before condemnation proceedings are brought or to intervene to protect its
rights on pain of losing the right to object altogether. I think, instead, that the consent
prerequisite is important and that Mann shows us why it is important.
D.      Enlargement of Trial Court’s Jurisdiction
          I further disagree with the majority’s reasoning that the consent prerequisite
cannot be jurisdictional because it does not “define[], enlarge[], or restrict[] the class
of causes [that] the [county court at law] may decide or the relief the court may
award.” Sierra Club v. Tex. Nat. Res. Conservation Comm’n (Sierra Club I), 26
S.W.3d 684, 688 (Tex. App.—Austin 2000), aff’d on other grounds, (Sierra Club II),
70 S.W.3d 809 (Tex. 2002). Applying Kazi,


 some courts of appeals, including our
own and the Sierra Club I court, have indicated that if a statutory requirement
defines, enlarges, or restricts the class of causes that the court may decide or the relief
that the court may award, the requirement is jurisdictional; if the requirement does
none of these things it is not jurisdictional, but is only a condition on which the
plaintiff’s right to relief depends. See Helton v. R.R. Comm’n of Tex., 126 S.W.3d
111, 118 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); Harris County
Emergency Servs., 122 S.W.3d at 223; Heart Hosp. IV, L.P. v. King, 116 S.W.3d 831,
834 (Tex. App.—Austin 2003, no pet.); Kshatrya v. Tex. Workforce Comm’n, 97
S.W.3d 825, 830–31 (Tex. App.—Dallas 2003, no pet.); Hartford Underwriters Ins.
Co. v. Hafley, 96 S.W.3d 469, 473 (Tex. App.—Austin 2002, no pet.); Tex. Dep’t of
Transp. v. Beckner, 74 S.W.3d 98, 103 (Tex. App.—Waco 2002, no pet.); Sierra Club
I, 26 S.W.3d at 688. Although this authority was decided in the context of exhaustion
of administrative remedies, I (like the majority) find it instructive for the present
situation. 
          In my view, the majority necessarily expands the scope of condemnation
proceedings by writing the consent prerequisite out of the statute as a jurisdictional
requirement, for which the remedy is dismissal, and, instead, deeming the consent
prerequisite a non-jurisdictional requirement that does not abort condemnation
proceedings. If section 62.106(d) means what it says, and if its provisions are
mandatory, whether jurisdictional or not, a navigation district that intends to condemn
property within the boundaries of a city must plead and prove that it has obtained the
city’s consent. See Tex. Water Code Ann. § 62.106(d). Yet by holding that section
62.106(d) is non-jurisdictional, in the absence of a statutory avenue for a city to
protest a violation of its right to consent, the majority necessarily implies that a
navigational district need not plead and prove that it obtained the city’s consent to the
condemnation. Absolutely nothing happens if a navigation district simply ignores
this mandatory provision of section 62.106 if, as the majority avers, the trial court has
jurisdiction to hear the condemnation proceedings and to enter a “settled” judgment
that the city may not then collaterally attack. Thus, under the majority holding, the
jurisdiction of the trial court is necessarily expanded to include condemnation
proceedings to which a city’s consent has not been obtained, contradicting the plain
language of the statute and further supporting the conclusion that the majority opinion
is incorrect and that section 62.106(d) is jurisdictional, not non-jurisdictional. See id.
E.      Abrogation of Section 62.106(d) by Later Enactment of Water Code
Section 62.107 

          Finally, I disagree with the majority’s statement that “Water Code section
62.107, later-enacted in 1947, confers condemnation power upon the Port with no
local consent requirement, and could suggest that the consent requirement does not
apply.”


 See Tex. Water Code Ann. § 62.107. I initially note that this
suggestion—that section 62.107 may supplant section 62.106(d)’s consent
prerequisite—has nothing to do with whether section 62.106(d)’s consent prerequisite
is jurisdictional. Rather, the statement is an argument that section 62.106(d)’s
consent prerequisite no longer controls, not that it controls but is not jurisdictional. 
The statement is, therefore, irrelevant to determining whether section 62.106(d)’s
consent prerequisite is jurisdictional. 
          In any event, section 62.107 grants the Port the general power to “acquire by
gift, purchase, or condemnation” certain lands. Id. § 62.107(a) (emphasis added). 
Section 62.106 qualifies section 62.107 with respect to the use of the land.


 
Therefore, sections 62.107 and 62.106(d) do not conflict, but should be read
consistently—which is how the Code Construction Act requires that we interpret two
provisions within the same act, if at all possible. See Tex. Gov’t Code Ann. §
311.021(2) (Vernon 2005) (“In enacting a statute, it is presumed that: . . . (2) the
entire statute is intended to be effective.”); Tex. Dep’t of Transp. v. City of Sunset
Valley, 146 S.W.3d 637, 642 (Tex. 2004) (“If the statutory language is unambiguous,
we must interpret it according to its terms, giving meaning to the language consistent
with other provisions in the statute.”). If sections 62.106 and 62.107 are read
consistently, then the consent provision in section 62.106(d) is not inapplicable, but
is complemented by section 62.107. I also note that it would be strange indeed for
the Legislature to have supplanted one section of an act by the “later-enacted” very
next section, dealing with complimentary subject matter and since codified as part of
the same Act by the same Legislature in the same session and made effective on the
same day, and I do not agree that it did so here.
F.      Conclusion
          For all of the reasons stated above, I would hold that Water Code section
62.106(d)’s consent prerequisite is a condition precedent to a trial court’s exercise of
subject-matter jurisdiction over condemnation proceedings brought under that
section. Thus, the Port’s failure to obtain the City’s consent to its condemnation of
American’s property was the proper subject of a jurisdictional plea, and that plea
should have been granted and the Port’s condemnation proceedings against American
dismissed, assuming that section 62.106 controls the disposition of the plea. 
          The Port argues, however, that section 62.106 is inapplicable to the Port’s
condemnation proceedings against American and thus does not control the
jurisdiction of this case. I turn, therefore, to those arguments.
Applicability of Section 62.106(d) to this CaseThe City rests its jurisdictional plea on its claim that the Port violated section
62.106, which provides that “no right-of-way may be condemned” without the prior
consent of a city through which the right-of-way runs. See Tex. Water Code Ann.
§ 62.106(d). 
          The Port offers two reasons that section 62.106(d) does not control. First, the
Port argues that four totally separate Water Code provisions—sections 61.115,
61.161, 62.105, and 62.107—provide independent authority for the condemnation
and do not require a navigation district to obtain a city’s approval before condemning
a right-of-way within the city’s territory. Second, and alternatively, the Port contends
that the term “right-of-way” in section 62.106(d) means an easement interest, not one
in fee simple. The Port’s focus is thus on the title in which the property is taken,
rather than on the property’s intended use. The Port argues that it was condemning
the property in fee simple and not as a right-of-way. The Port argues that section
62.106 applies only when a navigation district condemns an easement, not when it
takes property in fee simple. It points to evidence that the Bayport Terminal Project
also entailed some matters that it contends could not be considered right-of-way
projects under its definition: dredging to accommodate for wharves and docks and
the building of a sight-and-sound berm from the dredging material. The Port argues
that because it was condemning more than an easement here, section 62.106(d) does
not apply and that it may condemn American’s property without the City’s consent. 
          The City argues, in reply, that the term “right-of-way,” as used in section
62.106, refers to the property’s intended use, rather than to the title in which the
property will be taken and that its definition is not confined to an easement. The City
also points to evidence that the Port was planning to use the property for certain
purposes that the City contends were rights-of-way under any definition. For
example, the City notes that the Port intended to build a railroad corridor and a
roadway that would lead to a cruise terminal and allow for maintenance. According
to the City, the result of the property’s intended use as a right-of-way to any extent
is that section 62.106(d) applied to the condemnation proceeding. Thus, the City
concludes that the Port had to obtain its consent before the Port could condemn
American’s property. The City also argues that the sections of the Water Code cited
by the Port as independent grants of the power of eminent domain that do not contain
a consent prerequisite are not, in fact, independent sources of condemnation authority
that make its consent to the taking unnecessary.
          I will address both of the Port’s arguments.
 
A.      Whether Other Water Code Provisions Control and Allow Condemnation
Without the City’s Consent

Construction of Water Code Sections 61.115, 61.161, 62.105 and 62.107
          In response to the City’s reliance on section 62.106(d) in its jurisdictional plea,
the Port argued below, as it does on appeal, that four other provisions in chapters 61
and 62 of the Water Code independently allowed for the condemnation of American’s
property without the City’s consent


 and, therefore, that consent was unnecessary.
          Water Code chapters 61 and 62 apply to the Port because it operates as an
article XVI, section 59 navigation district


 while also enjoying the powers of an
article III, section 52 navigation district.


 These chapters provide, in relevant part:
          Section 61.115.     Acquisition of Property
The [navigation and canal] commission may acquire by gift, grant,
purchase, or condemnation any necessary rights-of-way and property for
necessary improvements contemplated by the district.

Id. § 61.115.
          Section 61.161.     Eminent Domain
(a)The district may exercise the power of eminent domain.
Id. § 61.161(a).



Section 62.105.Right-of-Way
The [navigation and canal] commission may by gift, grant, purchase, or
condemnation acquire the necessary right-of-way and property of any
kind for all necessary improvements contemplated by this chapter.

Id. § 62.105.
          Section 62.107.     Acquisition of Land
 
(a)Any district created under this chapter may acquire by gift,
purchase, or condemnation and may own land adjacent or
accessible to the navigable water and ports developed by it which
may be necessary or required for any and all purposes incident to
or necessary for the development and operation of the navigable
water or ports within the district, or may be necessary or required
for or in aid of the development of industries on the land.

Id. § 62.107(a).
          The Port argues that section 62.106(d)’s consent prerequisite is mooted by the
Port’s independent authority to condemn under Water Code sections 61.115, 61.161,
62.105, and 62.107, none of which contain a consent prerequisite like that in section
62.106. See id. §§ 61.115, 61.161, 62.105, 62.107. The City responds that (1) section
62.106(d)’s protections would be “meaningless” if the statutes on which the Port
relies controlled to the exclusion of section 62.106(d) and (2) the statutes on which
the Port relies can be harmonized with section 62.106(d)’s consent prerequisite. 
          The rules of statutory construction provide that courts (1) must presume that
the Legislature intended a just and reasonable result; (2) may consider the statute’s
object, the circumstances under which it was enacted, common law and former
statutory provisions, including laws on the same or similar subjects, and the
consequences of a particular statutory construction; (3) must construe all portions of
a statute (here, a statutory scheme) to be effective, if possible; and (4) must not
confine their review to isolated statutory words, phrases, or clauses, but must instead
examine the entire act. See Tex. Gov’t Code Ann. §§ 311.021(2), (3), 311.011,
311.023(3), (5); Meritor Auto., Inc. v. Ruan Leasing Co., 44 S.W.3d 86, 90 (Tex.
2001). All of these rules apply here. Most important, however, are the “plain
language” rule and the rule of ejusdem generis. See Fitzgerald, 996 S.W.2d at
865–66 (in ascertaining legislative intent, the most important consideration in
statutory interpretation, courts begin with plain language of statute). Under the rule
of ejusdem generis, when words of a general nature are used in connection with the
designation of particular objects or classes of persons or things, the meaning of the
general words is restricted to the particular designation. See Hubenak III, 141 S.W.3d
at 189–90 & n.110 (applying principle of ejusdem generis to condemnors’ offer and
tract of land described in condemnation petition); Hilco Elec. Coop. v. Midlothian
Butane Gas Co., 111 S.W.3d 75, 81 (Tex. 2003) (applying principle to purpose for
which electric cooperatives can be organized); Marcus Cable Assocs., L.P. v. Krohn,
90 S.W.3d 697, 701–02, 706 (Tex. 2002) (applying principle to construction of
private easements). 
          Sections 61.115, 61.161, and 62.105 of the Water Code, which the Port
contends supersede section 62.106 with its consent provision, are all general
provisions conferring on navigation districts the powers to acquire property, to
exercise the power of eminent domain, to acquire “necessary rights-of-way and
property of any kind,” and to condemn and to own “land adjacent or accessible to the
navigable water and ports developed by it.” See Tex. Water Code Ann. §§ 61.115,
61.161, 62.105, 62.107. 
          For example, sections 61.161 confers on navigation districts the power of
eminent domain, and section 61.115 empowers navigation districts to condemn any
“necessary rights-of-way and property for necessary improvements.” Id. §§ 61.161,
61.115. Section 62.105, entitled “Right-of-Way,” grants navigation districts the
general power to “acquire the necessary right-of-way and property of any kind” by
“gift, grant, purchase, or condemnation.” Id. § 62.105. By contrast, section 62.106,
entitled “Condemnation Proceedings,” specifies the purposes for which the district
is granted the power to condemn, the procedure for condemning, and the limitations
on condemnation of rights-of-way. Id. § 62.106. That is, section 62.106 limits the
navigation district’s exercise of the foregoing powers in condemnation proceedings
to those purposes that are necessary for the improvement of rivers, bays, creeks, and
streams, the construction and maintenance and canals and waterways, and other
purposes authorized by chapter 62; and it further limits the exercise of that power by
requiring the prior consent of the lawful authorities of any incorporated city or town
in which the district seeks to condemn a right-of-way. See id. § 62.106.


 Thus,
section 62.106 specifies certain particular purposes, applicable in this case, to which
the general powers conferred by sections 61.115, 61.161, and 62.105 may be put.
          Section 62.107 is complementary to section 62.106. Section 62.106 confers
on navigation districts the power to “condemn and acquire the right-of-way” as
necessary to improve navigable waters and to construct and to maintain canals and
waterways, subject to the condition that no right-of-way may be condemned without
the consent of the lawful authorities of any city through which a right-of-way is
condemned. See id. § 62.106. Section 62.107 then grants navigation districts the
power to “acquire by gift, purchase, or condemnation” land that may be “necessary
for the development and operation of the navigable waters or ports within the district”
or necessary for the development of or in aid of “industries on the land.” See id. §
62.107. Section 62.106 thus states certain uses for which a navigation district may
acquire property; and section 62.107 states the means by which such property may be
acquired.
          I disagree with the Port’s position that the grants of eminent-domain powers
in sections 61.115, 61.161, 62.105, and 62.107 of the Water Code represent 
independent, limitation-free bases for navigation districts to condemn rights-of-way
through cities. Rather, these are all provisions of the Water Code that are applicable
to navigation districts like the Port and that do not conflict with section 62.106. 
Therefore, under the plain language rule and the rule that all portions of a statutory
scheme must be given effect, they must be harmonized with section 62.106. 
Moreover, under the rule of ejusdem generis, the consent requirement in section
62.106 controls over the more general grants of power in the other provisions, not the
other way around, as the Port would have it. Reading the two chapters’ eminent-domain provisions as the Port does contravenes the rules of construction. Reading
them as the City does not only comports with well-settled rules of statutory
construction, but also promotes the purpose of section 62.106(d)’s consent
prerequisite, which is to “benefit . . . the municipality” by ensuring that “there [is] no
conflict in the use to which land in a city could be put, as between a navigation
district and a city.” See Banta I, 445 S.W.2d at 62. 
Grant of Eminent-Domain Power to the Port Under the Texas Constitution
          I also disagree with the Port’s implicit argument that the Legislature’s general
grant of eminent-domain power to navigation districts in sections 61.115 and 61.161
“trumps” chapter 62’s limitation on that power in the consent prerequisite in section
62.106(d). The special legislation converting the Port to an article XVI, section 59
navigation district provided:
Sec. 2. Conversion of District and Tax Supported Obligations.
 
(a)Effective and operative January 1, 1958, [the Port, referred
to as “the District” herein] is hereby converted to a
navigation district operating under the provisions of
Section 59 of Article XVI, Constitution of Texas, and after
said date, said District will operate under Section 59 of
Article XVI and this Section 2 of this Act; . . . .
 
Said District will thereafter be empowered and authorized to
exercise, in addition to all powers conferred by this Act, all powers
conferred upon said District by the law or laws under which it was
organized [Tex. Const. art. III, § 52], and, in addition, shall have all of
the powers and jurisdiction conferred upon Districts originally
organized under Article XVI, Section 59, of the Constitution of the State
of Texas, and particularly [listing several statutes then in effect,
including the predecessor to current Water Code section 61.115,
applicable to article III, section 52 districts]; provided, that if there is
any conflict or inconsistency between said laws or any of them, and this
Act, then to the extent of conflict or inconsistency, the provisions of this
Act shall govern.

See Act of Apr. 11, 1957, 55th Leg., R.S., ch. 117, § 2, 1957 Tex. Gen. Laws 241,
247 (emphasis added), amended by Act of May 25, 1987, 70th Leg., R.S., ch. 63, §
1, 1987 Tex. Gen. Laws 3506, 3506–07. The “powers and jurisdiction” set out in
Chapter 62 of the Water Code are those conferred upon navigation districts by article
XVI, Section 59. The powers and jurisdiction set out in Chapter 61 are conferred by
article III, Section 52.
          From the plain language of the above-quoted Act, it is clear that the Legislature
intended that the Port function, first and foremost, as an article XVI, section 59
district and that the “jurisdiction and powers” of an article III, section 52 district
merely supplement, rather than supplant, the Port’s article XVI, section 59 powers,
except that, in cases of conflict, “this Act shall control.” Because “this Act” is the
special legislation that converted the Port to an article XVI, section 59 district, I
construe the “except that” proviso, by its plain language, to state that, in cases of
conflict, the provisions of article XVI, section 59 control over the provisions of
article III, section 52; hence when there is a conflict between them, the provisions of
Chapter 62, enacted pursuant to article XVI, section 59, control over those in Chapter
61, enacted pursuant to article III, section 52. Thus, if there were a conflict between
section 62.106 and either section 61.115 or section 61.161, section 62.106 would
control. However, as there is no conflict between the provisions in chapters 62 and
61 invoked by the Port, all provisions cited by the Port apply to the condemnation
proceedings at issue here, with the more specific controlling over the more general.
          Accordingly, I would hold on this additional basis that Water Code section
62.106(d)’s consent prerequisite is not mooted by the general eminent-domain powers
granted by chapter 61 of the Water Code, but that satisfaction of section 62.106(d)’s
consent requirement is a jurisdictional prerequisite to the Port’s maintenance of
condemnation proceedings against American.


 
B.      Whether the Port’s Taking Constitutes Condemnation of a “Right-of-Way” Requiring the City’s Consent Under Section 62.106

          Finally, the Port argues that because section 62.106, by its express language,
applies only to the taking of “right[s]-of-way,” and because the Port intends to take
a fee-simple interest in the condemned property, not a right-of-way, section 62.106
does not apply, and the City’s consent was not necessary to the Port’s condemnation
of American’s property.
          The City acknowledges that the term “right-of-way” has been held to mean
different things in different contexts.


 However, it argues that, in this context, a
navigation district’s right to condemn right-of-way refers merely to the purpose for
which it may take land, not to the interest that it may take in the land. A close reading
of section 62.106 as a whole, in light of the entirety of the Water Code and settled
law, compels the conclusion that the City’s interpretation of section 62.106 is correct. 
          First, the other sections of the Water Code just discussed are designed to
empower navigation districts to take whatever land is necessary, and in whatever way
is necessary, to achieve the purpose of section 62.106. As the Port itself
acknowledges, sections 61.115, 61.161, and 62.107 of the Water Code all empower
a navigation district to take land in fee simple. See Tex. Water Code Ann. §§
61.115, 61.161, 62.107. Section 62.106, by contrast does not refer to the manner in
which land may be taken; rather it refers to the purposes for which public and private
land may be condemned by a navigation district.


 Id. § 62.106. When these
provisions are harmonized with section 62.106, as the rules of statutory construction
require, it is clear that “right-of-way” refers to the purpose for which a navigation
district may condemn public or private land. 
          It is also clear from the other provisions of the Code and prior law that land
may be taken in any way necessary to achieve the purposes set out in section 62.106
and that section 62.106’s consent provision applies to such a taking, regardless of the
means by which the land is taken. Moreover, other Water Code provisions would not
make sense if right-of-way were defined solely as the title in which property is taken,
rather than as the use to which the property will be put.



          The Port, however, noting that section 62.106(a) does not define the term right-of-way, supports its argument that right-of-way refers only to an easement by
referring us to subsection 62.106(b) of section 62.106. This subsection provides that
“[t]he assessment of damages [in condemnation proceedings] shall be in conformity
with the laws of the State of Texas for condemnation and acquisition of rights-of-way
by railroads.” Tex. Water Code Ann. § 62.106(b) (emphasis added). The Port
contends that because the laws for condemnation of rights-of-way by railroads
provide elsewhere that “[t]he right of way secured by condemnation to any railway
company in this State shall not be construed to include the fee simple estate in lands
. . . .,”


 section 62.106(b) should be construed as prohibiting navigation districts from
taking land in fee simple. 
          The Port’s argument misconstrues section 62.106(b). Section 62.106(b) does
not refer to the title in which a navigation district may acquire property through the
exercise of its power of eminent domain. Rather, by its plain language, the section
sets out a statutory standard for the assessment of damages in condemnation
proceedings. See Tex. Water Code Ann. § 62.106(b). Under the Texas
Constitution, the power of the State to take property for a public use is subject to the
right of the owner to just compensation. Tex. Const. art. I, § 17; State v. Hale, 146
S.W.2d 731, 736 (Tex. 1941). In this regard, the supreme court long ago established
that when a taking by a railroad leaves the landowner with some beneficial use of the
land, the damages will be less than the value of the fee; but, when the landowner is
deprived of all beneficial use of the land, he may recover the market value of the fee,
regardless of the nature of the conveyance. See Thompson v. Janes, 251 S.W.2d 953,
955–56 (Tex. 1952). Indeed, the court considered that “‘this principle is so well
established that it is generally assumed without discussion.’” Id. at 956 (quoting
Nichols on Eminent Domain, Vol. 4, § 12.41(2) (3d ed. 2005)); see also Hale, 146
S.W.2d at 736 (indicating that, with respect to payment of just compensation, State
itself “is in the same position and governed by the same rules, as railroads, counties
and other subdivisions of the State, and corporations, to which it has delegated power
of eminent domain”). Both the holding and the reasoning in Thompson apply to the
assessment of damages in a condemnation proceeding under section 62.106 of the
Water Code. But neither Thompson nor section 62.106(b) concerns the title in which
the property is condemned.
          I likewise reject the Port’s argument that reading section 62.106’s right-of-way
language as anything more than an easement is contrary to the Property Code’s
general rule that “[e]xcept where otherwise expressly provided by law, the interest
acquired by a condemnor under this chapter does not include the fee simple title to
real property, either public or private.” Tex. Prop. Code Ann. § 21.045 (Vernon
2000). The Meaney court, on which the Port relies, disposed of this very argument
that was based on the statute’s predecessor: 
We are not unmindful of the provisions of [Property Code section
21.045’s predecessor] . . . . This article provides that ‘except
where otherwise expressly provided by law, the right secured
(under the power of eminent domain) shall not be so construed as
to include the fee simple estate in lands.’
 
As stated in Texas Jurisprudence, ‘this enactment is but an
enunciation of the general rule, obtaining even in the absence of
statute, that the condemnation of property for a public use divests
its owner of no right further than is necessary for the purpose for
which the condemnation was authorized.’ 

Meaney, 222 S.W.2d at 407 (citations omitted). 
          Furthermore, contrary to the Port’s argument, the nature of the interest in
property that may be taken by a navigation district is not constrained by Revised Civil
Statute article 6339, which governs takings by railroads. Rather, the type of interest
conveyed in a condemnation proceeding under chapter 62 of the Water Code depends
upon the instrument under which it is conveyed, and a dispute over the nature of the
title that has passed is determined by reference to the words of the deed and the
attending circumstances. See Neale, 252 S.W.2d at 454–56. The use of the term
right-of-way to indicate the purpose for which land is conveyed: 
does not change the effect of the conveyance for the declaration in a
deed of the purpose for which land is conveyed or the use to be made of
it does not impose a condition upon the title granted; nor does it operate
to limit the grant to a mere easement.

Id. at 456. 
          In accordance with the foregoing principles of law, the predecessor to section
62.106 was held to empower a district formed under article XVI, section 59 of the
Texas Constitution, like the Port, to acquire absolute title when that type or kind of
estate or interest was necessary. Meaney, 222 S.W.2d at 407–08; Nat’l Ass’n of
Audubon Socs. v. Arroyo Colo. Navigation Dist., 110 S.W.2d 150, 152 (Tex. Civ.
App.—San Antonio 1937, no writ) (holding that right-of-way may be held in fee or
in easement). The Audubon Societies court stated, “Under [the predecessor to section
62.106], the discretion was lodged with the district to determine for itself whether it
was necessary to obtain a fee-simple title to the right of way sought to be condemned
or an easement over and through the leasehold estate held by the appellant.” 110
S.W.2d at 152 (emphasis added). The Meaney court, construing the predecessor to
section 62.106, explained:
It is not necessary that the term, ‘fee simple,’ or other particular
and precise words be used to authorize the taking of a fee simple
title. ‘There are no sacramental words which must be used in a
statutory power to take and hold lands in order to give a right to
take the lands in fee. Any language in the statute which makes its
meaning clear is sufficient.’
 
We hold that the appellee district is authorized under law to
acquire fee simple title to lands for all necessary improvements
contemplated by the Act.

Meaney, 222 S.W.2d at 407–08 (citations omitted); see also Housing Auth. of City of
Dallas v. Higginbotham, 143 S.W.2d 79, 88 (Tex. 1940) (indicating that courts have
construed grant of eminent domain power to mean that condemnor may condemn
such property as it deems necessary for its purposes); Costello, 143 S.W.2d at 578
(“The history of the many laws enacted by the legislature of this State relating to the
exercise of the right of eminent domain clearly shows that it is the policy of the
legislature to liberalize the exercise of that power, rather than to restrict it.”); Brazos
River Conservation & Reclamation Dist. v. Allen, 171 S.W.2d 842, 846 (Tex. 1943)
(“A governmental agency or public service corporation that has the power of eminent
domain and that already own an interest in property sought to be condemned may,
notwithstanding the ownership of such interest, acquire by condemnation the fee title
in the same land when necessity exists for the taking of the fee title.”).
          I would hold that section 62.106 governs the instant condemnation proceedings
and that the Port’s power to condemn rights or interests in land under that section is
limited only by the necessity of taking the land at issue for the purposes set out in the
section, with the consent of the lawful authorities of any incorporated city or town
within which condemnation is sought. This construction accords with the purpose
of section 62.106(d)’s consent prerequisite, namely, to protect cities by allowing them
veto power over right-of-way condemnation within their territory, regardless of the
nature of the conveyance by which that right-of-way is obtained. Indeed, it would
make little sense to read section 62.106 to protect cities only when a right of passage
was condemned by easement within their boundary, but not when the same right of
passage was condemned by fee. The Banta I court indicated as much when it
described section 62.106(d)’s predecessor’s purpose as protecting cities “so there [is]
no conflict in the use to which land in a city could be put, as between a navigation
district and a city.” Banta I, 445 S.W.2d at 62 (emphasis added). 
          For the foregoing reasons, I would hold that right-of-way, as used in Water
Code section 62.106, refers to the use of the property to be condemned, rather than
the title in which the property is to be taken, and thus the fact that the land was taken
in fee simple, as permitted by section 62.105, is irrelevant to the Port’s obligation to
obtain the City’s consent to the taking before condemning the land under section
62.106. Accordingly, I would hold that the Port had to obtain the City’s consent to
condemn American’s property. See Tex. Water Code Ann. § 62.106(d). The Port’s
having failed to do so, the trial court lacked subject-matter jurisdiction over the
condemnation proceeding and that proceeding should have been dismissed.
 
 
 
 
 
Conclusion

          I would reverse the trial court’s order denying the City’s jurisdictional plea and
would render judgment that the City’s jurisdictional plea be granted and that the
condemnation proceeding be dismissed.




                                                                        Evelyn V. Keyes
                                                                        Justice
The original panel consisted of Justices Taft, Keyes, and Hanks.

En banc consideration was requested. See Tex. R. App. P. 41.2(c).

A majority of the justices of the Court voted to grant en banc consideration. See id.

The en banc Court consists of Justices Taft, Nuchia, Jennings, Keyes, Alcala, Hanks,
Higley, and Bland. See Tex. R. App. P. 41.2(a).

Justice Keyes, joined by Justice Hanks, dissenting. See Tex. R. App. P. 47.5.

Chief Justice Radack, recused.